## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMERLANE T BEY II, as a Class Representative, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff, *Pro Se,*<br><br>v.<br><br>MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA NORTH AMERICAN OPERATIONS, MAZDA MOTOR CORPORATION, DENSO CORPORATION, and DENSO INTERNATIONAL AMERICA, INC,<br><br>               Defendants. | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## PRELIMINARY STATEMENT

Plaintiff Tamerlane T Bey II ("Plaintiff"); appearing *Pro Se*, files this Class Action Complaint, on behalf of himself and all others similarly situated against defendants Mazda Motor of America, Inc. and Mazda Motor Corporation (collectively, "Mazda"), Denso Corporation and Denso International America, Inc. (collectively, "Denso").[1] Based on personal knowledge as to matters relating to themselves, and on information and belief based on the investigation of counsel, including counsels' review of consumer complaints available on the database of the National Highway Traffic Safety Administration ("NHTSA") and other publicly available information, as to all other matters, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      This class action lawsuit seeks redress for the misconduct of Denso, a $47.6 billion global company that claims to be a leading supplier of advanced automotive technology, systems and components, and Mazda, an international manufacturer of automobiles that claims to manufacture and sell high-quality, safe vehicles, that knowingly exposed the purchasers and lessees of at least hundreds of thousands of Mazda vehicles, such as Plaintiffs and members of the proposed classes ("Class Members"), to a dangerous defect lurking in their vehicles' fuel pump. This defect causes Mazda vehicles to stall, their engines to shut down or fail to start, and creates a substantial risk of injury and death for any person operating or riding in a vehicle equipped with the defective fuel pump. Despite being aware of this problem for years, Mazda and Denso failed to disclose it to Plaintiffs until November 12, 2021 when Mazda announced a recall (Denso issued a general recall of its fuel pumps in April 2020).

2.      Denso is one of the largest suppliers of original equipment fuel pumps to vehicle manufacturers, including Mazda. According to Denso, its fuel "pumps are chosen as standard equipment by the world's most demanding OEMs, especially for their premium vehicles."

---

[1] Mazda and Denso are collectively referenced as "Defendants."

3.      On April 27, 2020, Denso issued a recall for defective low-pressure fuel pumps it manufactured between September 1, 2017 and October 6, 2018. The number of potentially affected vehicles across manufacturers is 2,020,000.

4.      The fuel pump in an automobile is critically important to the overall operation of a vehicle because it lifts gasoline from the fuel tank and delivers it to the engine where it is ignited in the combustion chamber and generates vehicle propulsion. A fuel pump is expected to last for the life of an automobile or a minimum of 200,000 miles.

5.      In its Part 573 Safety Recall Report ("Denso's April 27, 2020 Recall Report")[2] filed with NHTSA, Denso admitted its low-pressure fuel pumps contain a defective impeller that poses a risk to consumer safety:

> An impeller in some low pressure fuel pumps may become deformed under certain conditions which could render the fuel pump inoperable. If an impeller deforms to a point that creates sufficient interference with the fuel pump body, the fuel pump becomes inoperative. According to vehicle manufacturer's system evaluation, an inoperative fuel pump may result in the illumination of the check engine light and/or master warning indicators, rough engine running, engine no start and/or vehicle stall while driving at low speed and, in rare instances, a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash.

6.      Specifically, Denso stated its low-pressure fuel pumps could become inoperable if "an impeller is manufactured with a lower density, and contains a lower surface strength or is exposed to production solvent drying for a longer period of time, higher levels of surface cracking may occur which, when excessive fuel absorption occurs, may result in impeller deformation."[3] ("Fuel Pump Defect").

---

[2] Denso's April 27th, 2020 Recall Report is attached hereto as Exhibit A.

7.      On June 11, 2020, Denso expanded its recall by submitting a second Part 573 Safety Recall Report to NHTSA ("Denso's June 11, 2020 Recall Report"),[4] increasing the number of affected fuel pumps from 2,020,000 to 2,156,057.[5]

8.      The Denso Recall Reports listed various manufactures that "purchased this defective/noncompliant equipment," one of which is Mazda.[6]

9.      Despite admitting responsibility for the Fuel Pump Defect, and that the Defect poses a risk to consumer safety, Denso failed to take any corrective action itself and said "[t]he remedy program, if any, will be determined by vehicle manufacturers."[7]

10.     On November 17, 2020, nearly seven months after Denso's initial recall, Denso again expanded its recall, nearly doubling the months of production and, with that, the number of admittedly defective low–pressure fuel pumps with the Fuel Pump Defect. In this expansion, fuel pumps manufactured as early as June 26, 2017 and as late as June 28, 2019 were now included in the recall, and 1,517,721 additional pumps were admitted to be defective.[8]

11.     In its November 17, 2020 Recall Report, Denso also set forth the results of additional analysis it conducted concerning the Fuel Pump Defect, concluding that the density of the resin in the impeller material "was found to more

---

[3] *Id.*
[4] Denso's June 11, 2020 Recall Report is attached hereto as Exhibit B.
[5] Denso's April 27, 2020 Recall Report and June 11, 2020 Recall Report are collectively referenced as the "Denso Recalls."
[6] See Exhibit A at 3.
[7] *Id.* at 2.
[8] Denso's November 17, 2020 Recall Report is attached hereto as Exhibit C.

closely correlate with the occurrence of field cases" and that "a lower minimum surface strength [of impellers] than previously estimated could be possible":

> Additional analysis was conducted regarding the density of impellers manufactured during various periods. Because the impeller material contains three elements (resin, glass fiber, and calcium carbonate), but only one element (resin) is susceptible to swelling, only resin density was examined for this analysis. Resin density was found to more closely correlate with the occurrence of field cases than overall impeller density. The resin density findings indicated additional material lots which could contribute to the occurrence of the condition in combination with other factors. In addition, the surface strength of impellers manufactured during various periods was examined with additional variables considered. This analysis demonstrated that a lower minimum surface strength than previously estimated could be possible. The new resin density and surface strength information can be correlated by vehicle manufacturers with warranty data, production timing data, vehicle specific variables, and other information to determine which vehicles, if any, may be susceptible to the condition.[9]

12.     On July 17, 2020, Mazda filed a Part 579.12 Foreign Recall Campaign Report with NHTSA, alerting NHTSA of recalls in China, Japan, Thailand, Malaysia, Vietnam, and Mexico for vehicles equipped with Denso's Fuel Pumps that suffer from the Fuel Pump Defect ("Mazda's Foreign Recall").[10]

13.     Mazda's Foreign Recall states that "fuel pump impellers located inside the fuel delivery module (FDM) may experience surface cracks due to low part density during the manufacturing process and/or length of time between pump production and vehicle installation. As a result, the impeller may deform, causing interference with surrounding pump components."[11]

---

[9] *Id.*
[10] *See Exhibit D.*
[11] *Id.*

14.     Mazda's Foreign Recall also identified "Substantially Similar Vehicles in the U.S.": 2018-2020 Mazda CX-3, CX-5, CX-9, Mazda2, Mazda3, Mazda6, MX-5, and Toyota Yaris vehicles.[12]

15.     Despite using the same Fuel Pump, Mazda failed to recall the Class Vehicles "due to differences in U.S. logistic conditions, typical customer usage and other factors."[13]

16.     On November 12, 2021, over one year after the initial Denso Recall and Mazda's Foreign Recall, Mazda finally issued its own U.S. recall of its vehicles equipped with the defective low-pressure Denso fuel pumps. Mazda filed its own Part 573 Safety Recall Report ("Mazda's Recall Report")[14] with NHTSA confirming that at least 121,038 of its vehicles are equipped with the defective Denso fuel pumps. Mazda's Recall covers Mazda's 2019 CX-3, 2018-2019 CX- 5, 2018-2019 CX-9, 2019-2020 Mazda2, 2018 Mazda3, 2018 Mazda6, and 2018-2019 MX-5 vehicles manufactured at various times between April 2018 and January 2020 ("Mazda's 2020 Recalled Vehicles").

17.     Mazda's Recall Report confirms the existence and seriousness of the Fuel Pump Defect: "The impeller in some low pressure fuel pumps may become deformed under certain conditions, which could cause fuel pump failure. Fuel pump failure may result in engine no start and/or vehicle stall while driving at low speed and, in rare instances, a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash."[15]

---

[12] *Id.*
[13] *Id.*
[14] Mazda's November 12, 2021 Recall Report is attached hereto as Exhibit E.
[15] *Id.*

18.     Mazda claims to have accurately identified the total population of vehicles equipped with the defective fuel pumps.

19.     However, Mazda's Recall fails to include other 2013-2020 Mazda manufactured vehicles equipped with the same defective Denso made low-pressure fuel pump with a part number suffix 13350 ("Class Vehicles") as those in the Recall.

20.     While Mazda's Recall includes only certain model year 2018-2020 vehicles that suffer from the Fuel Pump Defect, a recall by another manufacturer over the same Fuel Pump Defect covers model year 2013-2019 vehicles equipped with Denso's same defective fuel pumps. Moreover, Mazda customers have been submitting Fuel Pump Defect complaints to NHTSA since 2013.

21.     Mazda admits it knew about the Fuel Pump Defect as early as March 2019.[16] Nevertheless, Mazda failed to make public the existence of the Fuel Pump Defect until November 12, 2021, over two years later. Moreover, Mazda failed to notify consumers directly or instruct them to stop driving their dangerous vehicles until they are repaired. Nor did Mazda offer a timely remedy.

22.     Despite admitting in its recall that the Fuel Pump Defect could occur while driving, "increasing the risk of a crash," egregiously, Mazda did not direct the owners and lessees of the Recalled Vehicles to immediately cease driving their cars. Mazda also did not offer owners and lessees loaner cars they could drive until an adequate remedy could be implemented.

---

[16] Exhibit F.

23.     Moreover, though Mazda has not made public its repair instructions to dealerships, Mazda's Recall is identical to those of three other manufacturers (Toyota, Honda, and Subaru) and each have implemented the same repair provided by Denso. But Mazda's Recall repairs are inadequate on multiple levels.

24.     Rather than following the industry standard and replacing the entire fuel pump module, Mazda's Recall directs technicians to replace only the fuel pump motor, which is part of the module. This is an extremely delicate and difficult procedure with a high risk of damaging the entire fuel pump module, which can result in gas leaking out of the fuel tank, creating hazardous conditions and exacerbating the Fuel Pump Defect instead of correcting it. As set forth below in Section IV, there are numerous reports from individuals who received the same repair from Toyota, Honda, and Subaru that detail the dangerous consequences of the recall repair.

25.     Thus, Mazda's Recall failed to adequately repair the Fuel Pump Defect, and often cause additional damage to the fuel pump module and the Vehicle.

26.     As a result, at least hundreds of thousands of Mazda's customers in the United States are driving vehicles that pose a serious safety risk.

27.     The Fuel Pump Defect in the Class Vehicles exposes occupants and others to extreme danger, even death. A vehicle that stalls or suffers engine shutdown is at heightened risk for collision. A vehicle that stalls or suffers engine shutdown causes drivers to react to remove themselves from danger, typically by exiting the road. Drivers stranded on the side of the road experience a heightened risk of danger, whether it is from other vehicles, remoteness or weather elements.

28.     Fuel pump failure can also prevent the driver from accelerating at the necessary and anticipated pace. Diminished acceleration ability creates unexpected hazards, startling drivers of the Class Vehicles and other drivers in their proximity. Finally, once a Class Vehicle fuel pump fails, the vehicle becomes totally inoperable and will not start.

29.     Despite Mazda's indisputable knowledge of the danger posed by defective fuel pumps in its vehicles, Mazda's Recall is woefully inadequate because it: (1) failed to identify and include the full scope of Mazda manufactured vehicles equipped with defective fuel pumps; (2) failed to offer a timely or effective repair; (3) failed to warn consumers about the serious safety hazards posed by the Fuel Pump Defect and recommend customers stop driving their vehicles until they are repaired; and (4) failed to offer free loaner vehicles until Plaintiffs' and Class Members' vehicles are repaired.

30.     As in Section IV, throughout the relevant period, Mazda's marketing of the Class Vehicles was and is replete with assurances about their safety and dependability. A vehicle that can suddenly stall and lose power during normal operating conditions is inherently unsafe and not dependable, and renders Mazda's marketing of the Class Vehicles untrue and materially misleading. Plaintiffs and other Class Members have been damaged as a result.

31.     Despite marketing and selling the Class Vehicles as safe and dependable, as alleged above, Mazda has long known of the Fuel Pump Defect. It amassed years of research, data gathering, and hundreds—if not thousands—of Fuel Pump Defect warranty claims. Moreover, under the TREAD Act, 49 U.S.C.

§ 30118, Mazda is duty-bound to, and does, monitor complaints from consumers that are posted on NHTSA's website. As set forth in Section IV below, there were consumer complaints on NHTSA's website about the Fuel Pump Defect in Mazda's vehicles that predate Mazda's 2021 Recall by over eight years (submitted in 2013).

32.     Denso is equally culpable because it designed, engineered, tested, validated, manufactured, and placed into the stream of commerce defective fuel pumps, which it knew would be installed the Class Vehicles. As described in Section IV below, Denso indisputably had exclusive knowledge of the Fuel Pump Defect well before October 2016, when Denso filed a patent application seeking to improve the durability and absorption qualities of the defective fuel pump impeller. However, at no time did Denso disclose to others what it knew about the Fuel Pump Defect nor was that information reasonably available to Plaintiffs and the public. Denso's knowing and intentional failure to disclose the Fuel Pump Defect was a direct and proximate cause of harm to Plaintiffs and Class Members.

33.     With or without a viable remedy for the Fuel Pump Defect, Mazda's Recalls have decreased the intrinsic and resale value of the Class Vehicles. Plaintiffs and other Class Members have been damaged as a result. Additionally, Class Members must still honor their lease and loan payments (without proration), even while their vehicles are inoperable and devalued.

34.     Plaintiff brings this lawsuit on behalf of himself and all others similarly situated who own or lease a Class Vehicle equipped with a defective Denso fuel

pump, and assert claims for breach of express warranty, breach of implied warranty, strict liability, negligent undertaking, and fraudulent omission.

## JURISDICTION AND VENUE

35.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(a) and (d), because Plaintiffs and Class Members are citizens of a state different than Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

36.     Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiffs' Magnuson-Moss Warranty Act claim arises under federal law, and this Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

37.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of actions giving rise to these claims occurred in this District, Mazda and Denso have caused harm to Plaintiffs in this District, and Mazda and Denso are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this District. Venue is also proper in this District pursuant to 18 U.S.C. § 1965.

## THE PARTIES

### Plaintiffs

38.     Tamerlane T Bey II is a citizen of New York City and resides in New York,

39.     Plaintiff Tamerlane T Bey II owns a 2018 Mazda 6 which he purchased from Carl Black Orlando ("Carl Black of Orlando, LLC") located in Orlando, Florida (11500 E Colonial, Orlando, FL 32817) on February 16th, 2021.

40.     Prior to purchasing his Mazda, Plaintiff Bey reviewed Mazda's promotional materials touting its safety and reliability, such as, Mazda's television advertisements, the Monroney sticker, and sales brochures, and interacted with at least one sales representative without Mazda disclosing the Fuel Pump Defect.

41.     Through his exposure and interaction with Mazda, Plaintiff Bey was aware of Mazda's uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed, based on Mazda's marketing message, that he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Bey purchased his vehicle did Carl Black Orlando or Mazda disclose to him that his vehicle was not safe or dependable, or that it was equipped with a defective Denso fuel pump.

42.     Plaintiff Bey's Mazda suffers from the Fuel Pump Defect because the impeller in his vehicle started absorbing fuel and deforming the moment it was exposed to gasoline.

43.     Plaintiff Bey's Mazda suffers from the Fuel Pump Defect and during at least six different usages experienced hesitated and interrupted acceleration and near engine stall out.

44.     The Fuel Pump Defect creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to Plaintiff Bey, other occupants in his Class Vehicle, and others on the road. At no time did Mazda inform Plaintiff Bey of the seriousness of the Fuel Pump Defect or recommend that he discontinue use of his vehicle until there is a repair or a replacement fuel pump.

45.     Plaintiff Bey purchased his Class Vehicle with the Fuel Pump Defect as part of a transaction in which Mazda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Bey did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Fuel Pump Defect has significantly diminished the value of Plaintiff Bey's Class Vehicle.

46.     Had Mazda disclosed the Fuel Pump Defect, Plaintiff Bey would not have purchased his Class Vehicle, or would have paid less to do so.

47.     Plaintiff Bey would purchase a Mazda in the future if Defendants' representations about the vehicle, including its safety and durability, were accurate.

**Defendants**

48.     Defendant Mazda Motor Corporation ("MMC") is a Japanese corporation with its principal place of business in Fuchu, Aki District, Hiroshima Prefecture, Japan, and the parent company of Mazda Motor of America, Inc. ("MMA"). MMC has substantial control over MMA, and MMA acts for the benefit of MMC.

49.     At all relevant times, MMC acted in the United States by itself and through MMA and its various entities including in this District. MMC, itself and through MMA and its various entities, is in the business of designing, engineering, testing, validating, manufacturing, marketing, and selling Mazda branded vehicles throughout the United States, including within this District.

50.     Defendant MMA is incorporated in California with its principal place of business in Irvine, California.

51.     MMA is a holding company of sales, manufacturing, engineering, and research and development strategies of MMC in the United States and is wholly owned by MMC. MMA is in the business of designing, engineering, testing, validating, manufacturing, distributing, marketing, selling, and servicing Mazda branded vehicles in the United States, including within this District.

52.     MMA, through its various entities, designs, manufactures, markets, distributes and sells Mazda automobiles through its hundreds of dealerships in the United States, including within this District.

53.     Defendant Denso Corporation ("DC") is a Japanese corporation located at 1-1, Showa-cho, Karlya, Alchi 448-9661, Japan. DC is the parent company of Denso International America, Inc. ("DIAM").

54.    DIAM is a wholly owned subsidiary of DC. DIAM acts for the benefit and at the discretion of DC.

55.    DC, itself, and through DIAM and its various subsidiaries and agents, designed, engineered, tested, and validated the low-pressure fuel pump that is equipped in Mazda vehicles sold/leased in the United States, including in Plaintiffs' states.

56.    DIAM is incorporated in Delaware and has its principal place of business at 2477 Denso Drive Southfield, Michigan 48033. DIAM is a holding company of sales, manufacturing, engineering, and research and development subsidiaries of Denso Corporation located in the United States. DIAM is in the business of designing, engineering, testing, validating, manufacturing, selling, among other things, fuel pumps throughout the United States, including within this District.

57.    DIAM is "Denso's North American regional headquarters and parent company for its North American operations, including design and production engineering, technical support, sales and finance."

58.    DIAM, through its various entities and on behalf of DC, designed, engineered, tested, and validated the low-pressure fuel pump that is equipped in Mazda and Acura Vehicles across the United States, including in Plaintiffs' states.

**FACTUAL ALLEGATIONS**

59.    Mazda manufactures, markets, and sells vehicles all over the United States, including California.

60.    Mazda has branded itself as the maker of safe and dependable vehicles and has spent millions of dollars on extensive marketing and advertising campaigns to

cement the association of safety and reliability with its Mazda brand, including the Class Vehicles. Through its investment marketing, Mazda sought to portray itself as the safest vehicle brand on the market.

61.     Denso is the world's second largest Tier1 Original Equipment Manufacturer ("OEM"), producing parts and products for Mazda and other manufacturers. According to its website, Denso records nearly $10.9 billion in annual sales in the United States, including in California.

62.     According to Denso itself, when designing, engineering, testing, and manufacturing its products, Denso aims to "[c]ontribute to future mobility that is safer, more comfortable and convenient for everyone." The defective fuel pumps fails to meet Denso's published standard.

63.     Defendants collectively designed, engineered, tested, validated, manufactured and placed in the stream of commerce Class Vehicles equipped with defective fuel pumps, thereby subjecting Plaintiffs and Class Members to an unreasonable risk of death or injury, and damaging Plaintiffs and Class Members as further detailed below. Nonetheless, Mazda marketed and sold the Class Vehicles, and has, at all times, uniformly branded the Class Vehicles as safe and dependable.

### A.  THE OPERATION OF CLASS VEHICLES' LOW-PRESSURE FUEL PUMP

64.     The Class Vehicles are equipped with Denso made low-pressure fuel pumps (the "Fuel Pump").

65.     All Class Vehicles are equipped with the same or substantially similar defective Fuel Pumps.

66.     Fuel Pumps serve a critical role in the function of combustion engines. In simple terms, the fuel pump lifts gasoline out of the fuel tank and sends it to the engine where it is injected into the combustion chamber and ignited, driving the pistons and creating propulsion. Denso explains the role of the electric fuel pump as "deliver[ing] fuel from the tank to the engine, under high pressure, depending on the vehicle application's specific requirements. The fuel is transported to fuel injectors, which spray the fuel into the engine cylinders."[17]

67.     The Fuel Pump assembly is mounted inside of the fuel tank. The Fuel Pump assembly consists of a fuel intake strainer at one end and a fuel output line at the other. At the heart of the Fuel Pump assembly is an electric motor with a plastic impeller attached to a rotating shaft. The impeller is a plastic disk that rotates and draws in fuel and pushes it up through the pump.[18] The impeller is equipped with vanes—or blades—that, when spun, creates negative pressure which lifts the gasoline out of the fuel tank and sends it to the engine. Protruding from the side of the Fuel Pump assembly is a fuel level float and a fuel level sender. Figure One illustrates the parts of the Fuel Pump assembly. Figure Two illustrates the internal components of the Denso Fuel Pump's electric motor.

---

[17] https://www.denso-am.eu/media/1462778/2020_dems_web.pdf (last visited November 16, 2021)
[18] https://www.denso-am.co.uk/products/automotive-aftermarket/ems-lambda-sensor/fuel-pumps/how-they-work/ (last visited November 16, 2021).

**Figure 1 Fuel Pump Assembly Diagram[19]**



**Figure 2 Electric Motor Internal Components[20]**



68.    As the electric motor rotates, the impeller spins generating negative

pressure. The negative pressure pulls fuel into the pump housing where it passes

through the electric motor assembly and exits through the output, into the fuel line

and forward to the fuel filter. After exiting the fuel filter, the fuel flow is

---

[19] http://www.agcoauto.com/content/news/p2_articleid/195 (last visited November 16, 2021)
[20] https://aftermarket.denso.com.sg/product_info/?cat_id=194 (last visited November 16, 2021)

accelerated via a high-pressure pump which delivers pressurized fuel to injectors mounted in the engine. Denso describes the operation of its in-take fuel pump as "[w]hen the impeller of an in-tank [f]uel [p]ump rotates, the blade moves around the impeller, creating a swirling motion inside the pump to deliver fuel. The fuel then passes around the motor, forcing the check valve upwards to supply fuel to the fuel pipe."[21]   Figures Three and Four, below, illustrates this sequence.

---

[21] https://www.denso-am.eu/media/966284/dems180001mm-lr.pdf (last visited November 16, 2021)

**Figure 3 Fuel Pump Sequence**[22]



**Figure 4 Impeller Rotation Operation**[23]



---

[22] https://www.autoplusdubai.net/blog/fuel-pumps-common-causes-and-how-to- identify-it/ (last visited November 16, 2021).

[23] https://aftermarket.denso.com.sg/product_info/?cat_id=194 (last visited November 16, 2021)

69.     At all times, by design, the Fuel Pump assembly and all its components are exposed to gasoline within the tank. Fuel pumps are designed to survive the harsh environment for at least 200,000 miles.[24] Denso claims its fuel pumps "offer more than triple the lifetime…."[25]



**Figure 5**

## B.  THE CLASS VEHICLES SUFFER FROM A FUNDAMENTALLY DEFECTIVE FUEL PUMP

70.     As described herein, the Class Vehicles' Fuel Pumps suffer from a fundamental defect causing them to prematurely fail. Engines operate within a narrow and precisely calibrated air fuel mixture range, which means they are very sensitive to fuel pressure and delivery requirements. Partial, intermittent, or

[24] https://www.autoblog.com/2015/11/24/how-long-does-a-fuel-pump-usually- last/ (last visited November 16, 2021).
[25] https://densoautoparts.com/fuel-pumps.aspx (last visited November 16, 2021).

complete fuel pump failure disturbs the calculated precision and results in engine stalling or hesitancy.

71.    Based on Mazda's and Denso's own admissions, and the findings of Plaintiffs' Expert to date, the failure results from a defectively designed plastic impeller in the Fuel Pump.

72.    A manufacturer's goal in designing and manufacturing a fuel pump must be to design and create one that operates safely and dependably for the life of the vehicle. According to the analysis of Plaintiffs' Expert to date, and by Mazda's and Denso's admissions, the Fuel Pump assembly in the Class Vehicles was poorly designed and/or manufactured.

73.    As Defendants admit, the subject Fuel Pumps contain an impeller that could deform due to excessive fuel absorption.[26] The Denso Fuel Pump impeller's material is unsuitable for its environment due to its excessive fuel absorption propensity, which causes swelling and premature and unexpected Fuel Pump failure.[27]

74.    Plaintiffs' Expert's research to date indicates that the Denso impeller uses an unsuitable material for its intended use. The impeller's material has an inferior long-term dimensional instability (it deforms, swells and changes shape), resulting in premature and unexpected failure due to component distortion and the resultant swelling induced friction.

75.    The Denso impeller's material has inadequate heat resistance, potentially resulting in dimensional distortion and loss of structural integrity when exposed to

[26] Compare Exhibits A-B with Exhibits C-G.
[27] See Exhibit A at 1-2.

high temperatures or repeated temperature cycling (i.e., the intended and repeated temperature changes of operation).

76.     The impeller's material is also highly porous, which may lead not only to absorption of gasoline, but also fuel contaminants may become lodged in the impeller's pores, leading to Fuel Pump failure.

77.     Plastics absorb liquids, typically. However, the degree of absorption varies depending on the type of plastic and its environmental conditions. When plastics absorb liquid, such as gasoline, the plastic pieces' intended dimensions change. Therefore, manufacturers like Denso and Mazda must adequately design and validate plastic materials exposed to liquids to ensure that they remain dimensionally stable.[28] Here, Mazda and Denso clearly failed to do that with respect to the Fuel Pumps in the Class Vehicles.

78.     Moreover, according to Plaintiffs' Expert's research to date, Denso's further hypothesis that lower surface strength of the impeller contributes to the Fuel Pump Defect is an obvious and expected correlation rather than a separate issue. Notably, it is typical and expected for a low-density material to exhibit lower surface strength when compared to a higher density material. It is also expected that low density materials would have higher porosity and absorption propensity compared to higher density materials.

79.     Mazda and Denso admitted the impeller was poorly designed to the point that it cannot remain dimensionally stable under its intended conditions.

[28] https://www.ensingerplastics.com/en-us/shapes/plastic-material-selection/dimensionally-stable (last visited November 16, 2021).

Specifically, the Mazda Recall admitted that "[f]uel pump failure may result in engine no start and/or vehicle stall while driving at low speed and, in rare instances, a vehicle stall could occur while driving at high speeds, increasing the risk of a crash."[29] Moreover, Denso admitted in the Denso Recalls that the impeller "may become deformed" and cause the Fuel Pump to fail and become inoperable.[30]

80.     The Fuel Pump Defect manifests from the moment the Fuel Pump is installed in the fuel tank and submerged in gasoline. Once exposed to gasoline, the impeller begins to absorb fuel, swell, and deform.

81.     The Fuel Pump and/or the Fuel Pump impeller was not designed and/or manufactured with the necessary robustness to operate safely under normal operating conditions.

82.     At the time the Fuel Pumps were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce by Defendants, Defendants were aware of, and had access to, reasonable alternative designs. Such designs would mitigate or eliminate the Fuel Pump Defect.

83.     For example, Defendants could have mitigated or eliminated the Fuel Pump Defect by using different designs and/or materials where:

   A.  The impeller was not fuel permeable under intended and foreseeable purposes;

   B.  The impeller would not deform when exposed to operating temperatures under intended and foreseeable purposes;

---

[29] Exhibit E.
[30] Exhibit A.

---

    C.  The impeller would not prematurely age under intended and foreseeable purposes;

    D.  The impeller would not lose its dimensional stability under intended and foreseeable purposes; and/or

    E.  The impeller would not contact the fuel pump body under intended and foreseeable purposes; and/or

    F.  The Fuel Pump would not overheat under intended and foreseeable purposes.

84.    Nevertheless, Defendants designed, engineered, tested, validated, manufactured, and placed in the stream of commerce Class Vehicles equipped with the defective Fuel Pumps that cause an unreasonable risk of injury or death to the Plaintiff, Class Members, and others.

**C. THE FUEL PUMP DEFECT REDUCES ENGINE POWER, CAUSES VEHICLE STALLING, AND CAN LEAVE THE CLASS VEHICLES COMPLETELY INOPERABLE COMPROMISING CONSUMER SAFETY**

85.    The Fuel Pump Defect in the Class Vehicles exposes occupants and others to extreme danger, even death. In fact, Mazda and Denso tacitly admitted as much in their respective recalls, stating that the Fuel Pump Defect can "increas[e] the risk of a crash."[31]

86.    The Fuel Pump is an integral component of safe vehicle operation. But as described herein, the Class Vehicles suffer from a fundamental design flaw that causes the Fuel Pump to prematurely fail. As Mazda admitted in its recall, the

deformed impeller comes in contact with the Fuel Pump body, creating excess running resistance, resulting in "engine no start and/or vehicle stall' and "increasing the risk for a crash."[32] In the Denso Recalls, Denso admitted the deformed impeller contacts the Fuel Pump body, creating excess running resistance and causing reduced engine performance or complete engine failure:

> If an impeller deforms to a point that creates sufficient interference with the fuel pump body, the fuel pump becomes inoperative. According to vehicle manufacturer's system evaluation, an inoperative fuel pump may result in the illumination of the check engine light and/or master warning indicators, rough engine running, engine no start and/or vehicle stall while driving at low speed and, in rare instances, a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash.[33]

---

[31] Compare Exhibits A-B with Exhibit E.
[32] Exhibit E.

³³ See Exhibits A and B.

87.     Engines necessarily require a steady gasoline supply to function properly. The Fuel Pump's primary purpose is to transfer gasoline from the tank to the engine. But when the Fuel Pump fails, gasoline is not supplied to the engine, causing reduced engine power, stalling, and/or engine shutdown.

88.     Compounding the problem, Fuel Pump Defect occurs spontaneously with no advance warning to the consumer, thereby creating an extremely dangerous condition for drivers, including those on the road who may be left helpless and unable to take action to get out of the way of oncoming traffic or reach safety.

89.     Class Members' complaints set forth below exemplify the real-world dangers caused by the Fuel Pump Defect.

90.     Vehicle manufacturers like Mazda monitor NHTSA and other databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects. Accordingly, Mazda knew, or should have known, of the many complaints lodged with NHTSA and elsewhere about the specific safety hazard that is the subject of the Recalls.

91.     By way of example, the consumer complaints set forth below demonstrate the seriousness of the Fuel Pump Defect and further show that Mazda knew or should have known of them as early as 2017, or was reckless in not knowing of them. These consumer complaints represent a small fraction of the hundreds of similar complaints submitted to NHTSA by owners and lessees of the Class Vehicles regarding the Fuel Pump Defect.

92.     On August 21, 2017, the owner of a 2015 Mazda3 filed the following complaint with NHTSA:

HOT WEATHER ACCELERATION AND BLIND SPOT MONITORING

SYSTEM (BSM) ISSUE: IN EXTREMELY HOT WEATHER BSM OFF

LIGHT TURNS ON REPEATEDLY WHILE THE VEHICLE IS IN

MOTION OR STARTING FROM COMPLETE STOP. AT THE SAME

TIME THE INFOTAINMENT SYSTEM DISPLAY FLICKERS IN

SYNC WITH THE BSM OFF LIGHT APPEARANCE. WHEN THIS

OCCURS THERE IS A CLICKING SOUND COMING FROM THE

FRONT OF THE CAR/WHERE THE ENGINE IS LOCATED. THE

SOUND IS ACCOMPANIED BY TEMPORARY LOSS OF

ACCELERATION WHEN IN MOTION OR STARTING TO MOVE

FROM A COMPLETE STOP. WHEN THIS OCCURS WHILE

STARTING FROM A COMPLETE STOP, THE ENGINE

REVOLUTIONS (REV) DROPS BELOW 1K RPM DESPITE GAS

PEDAL INPUT THUS THE CAR WOULD NOT MOVE/ACCELERATE

FOR ABOUT 5 SECONDS. WHEN IT OCCURS WHEN THE CAR IS

IN MOTION SUCH AS ON THE HIGHWAY OR MERGING ONRAMP

INTO THE HIGHWAY THE CAR UNSAFELY SLOWS DOWN

DESPITE GAS PEDAL INPUT. AGAIN THIS ISSUE IS OBSERVED

DURING UNUSUALLY HOT DAYS EG. JULY 22, 2017 IN ST. LOUIS,

MISSOURI[34]

93.     On January 31, 2018, the owner of a 2013 Mazda CX-7 filed the following

complaint with NHTSA:

---

[34] NHTSA ID 11018752.

TL* THE CONTACT INQUIRED ABOUT A 2013 MAZDA CX-7. THE CONTACT STATED THAT THE VEHICLE EXPERIENCED A LACK OF ACCELERATION AND REDUCED ENGINE POWER. ALSO, THE TRACTION CONTROL WARNING INDICATOR ILLUMINATED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS APPROXIMATELY 59,400. [35]

94.     On May 13, 2018, the owner of a 2018 Mazda CX-5 filed the following complaint with NHTSA:

SITUATION: DRIVING UPHILL ON HWY 120 ON NEW PRIEST ROAD, BIG OAK FLAT, CA, TWO LANE MOUNTAIN ROAD. SLOW CAR IN FRONT OF ME AND A DELIVERY TRUCK TAILGATING. SLOW CAR EVENTUALLY MOVES ASIDE IN A TURNOUT AND I ACCELERATE TO OPEN UP SPACE BETWEEN MYSELF AND WHAT I THOUGHT WOULD BE THE TRUCK BUT SOMEHOW THE SLOW CAR RETURNED TO THE DRIVING LANE AHEAD OF THE TRUCK. I CONTINUE TO ACCELERATE TO ATTEMPT TO OPEN UP SPACE BETWEEN MYSELF AND THE CAR BEHIND ME WHEN I LOST POWER, THE CAR BEHIND ME MOVES TO THE OPPOSING TRAFFIC LANE TO AVOID REAR ENDING MY CAR THAT IS RUNNING IN DEGRADED MODE (ACCELERATOR HAS NO EFFECT, BASICALLY MOVING ON IDLE POWER) AND

---

[35] NHTSA ID 11066016.

NARROWLY MISSES AN ONCOMING CAR AS I MOVE TOWARDS

THE RIGHT EDGE OF THE RIGHT LANE. TRUCK BEHIND ME

HAS TO BRAKE HARD TO AVOID REAR ENDING ME. THERE

WAS NO SHOULDER TO PULL OVER TO AT THAT LOCATION

IMMEDIATE LOCATION. I PULL OVER A FEW HUNDRED YARDS

FURTHER AT A SAFE LOCATION. GRADE WAS PERHAPS 4% TO

6%. WEATHER: HOT 90 DEGREES SPEED: ACCELERATING FROM

35 TO 50 MPH (GUESS) DIAGNOSTIC LIGHTS: SMART CITY

BRAKING SYSTEM FAILURE WARNING, PLUS A LOT OF OTHER

WARNING LIGHTS LIT INCLUDING CHECK ENGINE LIGHT.

AFTERMATH: I PULLED SAFELY OVER, STOPPED THE ENGINE,

WAITED A WHILE AND RESTARTED THE ENGINE AND THE CAR

RETURNED TO IT'S NORMAL DRIVING BEHAVIOR AND

COMPLETED MY TRIP. OTHER INFORMATION: THIS IS THE 3RD

OCCURRENCE OF THIS BEHAVIOR. EACH TIME I HAVE HAD

MAZDA LOOK AT THE PROBLEM. 1ST OCCURRENCE THEY

REPLACED THE CYLINDER COIL, 2ND OCCURRENCE THEY

REPLACED A SPARK PLUG FOR MISFIRE. 3RD OCCURRENCE, TO

BE DETERMINED.[36]

95.     On June 12, 2018, the owner of a 2015 Mazda3 filed the following

complaint with NHTSA:

TL* THE CONTACT OWNS A 2015 MAZDA 3. WHILE

ACCELERATING FROM A TRAFFIC LIGHT, THE VEHICLE

STALLED WITHOUT WARNING. THE CONTACT WAS UNABLE TO

RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO

GUNTHER MAZDA (1800 S STATE RD 7, FORT LAUDERDALE, FL

33317, (954) 797-1600) WHERE IT WAS DIAGNOSED THAT THE

BATTERY NEEDED TO BE REPLACED. THE VEHICLE WAS

REPAIRED; HOWEVER, THE FAILURE RECURRED. THE VEHICLE

WAS THEN TOWED TO LOU BACHRODT MAZDA COCONUT

CREEK (5400 SR 7, COCONUT CREEK, FL 33073, (954) 247-5000)

WHERE IT WAS DIAGNOSED THAT THE FUEL PUMP NEEDED TO

BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE

FAILURE RECURRED TWICE. THE MANUFACTURER WAS

INFORMED OF THE FAILURES. THE APPROXIMATE FAILURE

MILEAGE WAS 36,000.[37]

96.    On July 15, 2018,  the owner of a 2018 Mazda CX-9 filed  the following

complaint with NHTSA:

ON FRIDAY (JUNE 29TH, 2018) AROUND 9:29 PM, MY CAR

BROKE DOWN WHILE MY FAMILY AND I WERE TRAVELING

FROM ROCHESTER NY TO BOSTON MASSACHUSETTS. I WAS

DRIVING DOWN THE MASSACHUSETTS TURNPIKE WHEN ALL

OF A SUDDEN MY CHECK ENGINE LIGHT TURNED ON AND MY

CAR JUST STARTED TO SLOW DOWN IN THE MIDDLE OF THE

HIGHWAY. I WAS ABLE TO PULL OVER IN TIME AND CALLED

MAZDA ROADSIDE ASSISTANCE BECAUSE AFTER THE CAR

STOPPED, IT WOULDN'T TURN BACK ON. SINCE WE WERE ON A RESTRICTED HIGHWAY, MY CAR HAD TO BE TOWED AND WE WERE TAKEN TO A SAFER LOCATION. WHEN THE CAR WAS PUT DOWN, IT TURNED ON AND THE CHECK ENGINE LIGHT WAS STILL ON AND THE FUEL GAUGE SAID THAT THE CAR STILL HAD 40 MILES LEFT. THE GUY THAT TOWED OUR CAR SAID THAT IT MIGHT HAVE BEEN A FUEL ISSUE, SO WE WENT TO GET GAS. ONCE WE FILLED UP OUR TANK THE CHECK ENGINE LIGHT WAS STILL ON BUT WE WERE ABLE TO REACH OUR DESTINATION. THE NEXT MORNING, I TOOK THE CAR TO THE NEAREST MAZDA DEALERSHIP AND THEY RESTARTED THE CAR AND ACCORDING TO THEIR REPORT NOTHING WAS WRONG WITH THE CAR. THEY SAID THAT IT WAS SAFE TO DRIVE BUT THEY HAD NO CLEAR REASON AS TO WHY THE FUEL GAUGE WASN'T STATING THE CORRECT INFORMATION. AFTER THE TRIP I, REPORTED THIS ISSUE TO MAZDA AND THEY DIDN'T ANSWER ME UNTIL TWO WEEKS LATER. THEIR RESPONSE WAS THAT THERE WAS PROBABLY NOTHING WRONG WITH THE VEHICLE AND THAT THIS WAS A ONE TIME ISSUE. I DID RESEARCH ON MY OWN AND DISCOVERIES THAT SOMEONE FROM SAUDI ARABIA HAD A SIMILAR ISSUE. SINCE MAZDA HASN'T BEEN WILLING TO HELP RESOLVE THE SITUATION I AM FILING THIS COMPLAINT BECAUSE I AM NOT

WILLING TO PUT MY FAMILIES LIFE IN THE SAME RISK

AGAIN.[38]

97.    On January 2, 2019, the owner of a 2014 Mazda3 filed the following

complaint with NHTSA:

OCCASIONALLY THE ENGINE WILL HESITATE WHEN

ACCELERATING, AND THEN THE CHECK ENGINE LIGHT, TPM,

AND STABILITY CONTROL LIGHT WILL ILLUMINATE ON THE

DASH. LESS FREQUENTLY, THE ENGINE WILL OCCASIONALLY

STALL WHILE DRIVING OR WHILE SITTING AT A STOP LIGHT.

THE LIGHTS ON THE DASHBOARD WILL REMAIN

ILLUMINATED, SO I DO NOT THINK IT'S A TOTAL LOSS OF

POWER.[39]

98.    On June 2, 2019, the owner a 2019 Mazda3 filed the following complaint

with NHTSA:

REAR VIEW MIRROR FELL OFF WHILE ON THE FREEWAY. HOT

DAYS WILL BREAK DOWN THE ADHESIVE AND CAUSE THE

REAR VIEW MIRROR TO FALL OFF. - BRAKES VIBRATE

HARSHLY WHEN IN SPORT MODE. FASTER THE VEHICLE GOES,

THE MORE HARSH THE BRAKES WILL VIBRATE. -

ACCELERATION IS JERKY ON LOW END (1ST/2ND) GEAR. IN

STOP AND GO TRAFFIC, OR GOING UP- HILL ON LOAD,

ACCELERATION WILL FEEL JERKY WHEN TRY TO KEEP A

---

[38]     NHTSA ID 11111474.
[39]     NHTSA ID 11164555.

STEADY SPEED BETWEEN 5-15MPH. CAR FEELS NORMAL WHENPUSHING THE ACCELERATION HARDER.[40]

99.    On July 23, 2019,  the owner of a 2016  Mazda CX-9 filed  the following complaint with NHTSA:

IN 2017, MY CAR SHUT OFF TWO TIMES, WITHOUT WARNING, ONE TIME AT A STOP LIGHT AND AGAIN ON THE HIGHWAY GOING 70MPH. WE WERE ACCELERATING AT THE STOP LIGHT WHEN IT SHUT OFF AND THEN DRIVING ON THE HIGHWAY. TOOK THE CAR TO THE DEALERSHIP AND 72 CODES CAME UP. THEY SAID IT WAS THE DVD PLAYERS (THAT THEY SOLD AND INSTALLED!!!) THAT WERE CAUSING THE ISSUE. THEY SUPPOSEDLY 'FIXED' THE ISSUE. NOW IN JULY 2019, THE CAR SHUT OFF AN ADDITIONAL FIVE TIMES. THREE TIMES WHILE DRIVING AND TWICE IN A PARKING LOT. WE WERE ON A HIGHWAY AGAIN WHEN THE CAR JUST SHUT OFF WITH NO WARNING, LIGHTS ON THE DASH STARTED FLASHING, AND THE POWER STEERING WENT OUT ONE OF THE TIMES. MY HUSBAND HAD TO PUT IT IN NEUTRAL, COAST TO THE SHOULDER, COME TO A COMPLETE STOP AND THEN ATTEMPT TO START IT EACH TIME. CARS WERE DODGING US EVERY TIME AND LUCKILY WE WEREN'T HURT. MY CHILDREN WERE IN THE VEHICLE EVERY SINGLE TIME. WE HAD THE CAR

[40] NHTSA ID 11217419.

TOWED TO THE DEALERSHIP WHERE 68 CODES CAME UP. THIS

TIME THEY'RE SAYING IT'S THE FUEL PUMP AND THAT THEY

CAN 'FIX' IT, BUT CAN'T 100% GUARANTEE IT WON'T HAPPEN

AGAIN. WE WERE PUT IN A LIFE THREATENING SITUATION

EVERY TIME, WITHOUT WARNING, AFTER GIVING THE

DEALERSHIP A CHANCE TO FIX IT. THE CAR IS UNDER THREE

YEARS OLD AND ONLY HAS 30,400 MILES ON IT.[41]

100.    On September 6, 2019, the owner of a 2018 Mazda CX-5 filed the

following complaint with NHTSA:

TL* THE CONTACT OWNS A 2018 MAZDA CX-5. WHILE DRIVING

20 MPH AND BELOW, THE VEHICLE FAILED TO ACCELERATE.

THE CONTACT HAD TO DEPRESS THE ACCELERATOR PEDAL

WITH FORCE TO INCREASE THE SPEED. THE CONTACT TOOK

THE VEHICLE TO FINDLAY MAZDA (7760 EASTGATE ROAD,

HENDERSON, NV 89011, (702) 955-5555) TO BE REPAIRED PER

NHTSA CAMPAIGN NUMBER: 19V497000 (ENGINE, POWER

TRAIN); HOWEVER, THE REPAIR DID NOT CORRECT THE

FAILURE. THE CONTACT TOOK THE VEHICLE BACK TO THE

DEALER, BUT THEY WERE UNABLE TO LOCATE ANY FAILURE

CODES. THE MANUFACTURER WAS CONTACTED AND

PROVIDED CASE NUMBER: 1-2318934006. THE VEHICLE WAS

NOT REPAIRED. THE FAILURE MILEAGE WAS 24,800.[42]

---

[42] NHTSA ID 11253636.

101.    On September 27, 2019, the owner of a 2014 Mazda6 filed the following

complaint with NHTSA:

> ENGINE WILL STALL OUT WHILE DRIVING VEHICLE LOSES
>
> ALL POWER CHECK ENGINE LIGHT COMES ON BATTERY LIGHT
>
> COMES ON TRACTION CONTROL LIGHT COMES ON. WHEN
>
> ENGINE STALLS OUT AND THEN I LOSE POWER STEERING AND
>
> BRAKE CONTROL AND WILL HAVE TO PULL OVER TO THE SIDE
>
> TO RESTART THE VEHICLE. ENGINE WILL SPUTTER ON START
>
> UP WHICH SOUNDS LIKE A FAULTY MASS AIRFLOW SENSOR
>
> THIS IS A 2014 MAZDA MAZDA 6 WITH 57000 MILES [43]

102.    On November 12, 2019, the owner of a 2018 Mazda CX-5 filed the

following complaint with NHTSA:

> MAZDA CX-5. CONSUMER WRITES IN REGARDS TO VEHICLE
>
> BEING TOTALED AS A RESULT OF LOSS OF ENGINE POWER.
>
> *LD *JS[44]

103.    On February 6, 2020, the owner of a 2019 Mazda CX-5 filed the following

complaint with NHTSA:

> I WAS DRIVING ON THE FREEWAY ABOUT 65 MILES PER HOUR
>
> AND THE THE CAR STARTED TO RUN ROUGH AND THE DASH
>
> LIGHTS WENT OUT. IT FELT LIKE IT WANTED TO STALL SO I
>
> KEPT MY FOOT ON THE GAS AND BRAKE AND EXITED THE
>
> FREEWAY AND DROVE THE SIDE STREETS HOME. THE

---

[43] NHTSA ID 11258590.
[44] NHTSA ID 11278994.

PROBLEM DID NOT HAPPEN AGAIN SO FAR.[45]

104.    On May 9, 2020, the owner of a 2018 Mazda CX-5 filed the following complaint with NHTSA:

ON MAY 9, 2020, OUR MAZDA CX5 LOST THRUST, STALLED AND CAME TO A COMPLETE STOP WHILE DRIVING ON A HIGHWAY GOING 55 MPH ON A STRAIGHT 3 LANE ROAD. THIS OCCURRED DESPITE THE PCM PROGRAMMING WAS RE-CALIBRATED DUE TO A MANUFACTURER RECALL IN SEPTEMBER 2019 (NHTSA RECALL NO. 19V497000). THE CAR IS TOWED TO A MAZDA SERVICE CENTRE AND IS AWAITING DIAGNOSIS. *TR[46]

105.    On June 16, 2020, the owner of a 2019 Mazda CX-5 filed the following complaint with NHTSA:

IN JULY 2019 (APPROXIMATELY 2 MONTHS AFTER DELIVERY) MY 2019 MAZDA CX-5 BEGAN TO DRIVE ROUGHLY AT SLOW SPEEDS- SPECIFICALLY SPEEDS 15 MPH OR BELOW. THE VEHICLE WOULD NOT COAST (EVEN DOWNHILL) AND WOULD SEEM TO SLIP OUT OF GEAR (THIS VEHICLE HAS AN AUTOMATIC TRANSMISSION). MORE SPECIFICALLY, THE VEHICLE WOULD BUCK AND LURCH ON IT'S OWN WITHOUT ENGAGING THE ACCELERATOR OR BRAKE. THIS WAS HAPPENING GOING UPHILL, DOWNHILL AND ON FLAT GRADE. I BROUGHT THE VEHICLE TO THE DEALER AND AT THEIR

---

[45] NHTSA ID 11307591.
[46] NHTSA ID 11307591.

REQUEST TOOK AN EMPLOYEE FOR A DRIVE SO THEY COULD

FEEL IT. THE EMPLOYEE DID FEEL IT, TOLD THE SERVICE

MANAGER, WHO THEN TOLD ME THAT, "THEY ARE SUPPOSED

TO DRIVE LIKE THAT." HE SAID HE DROVE AROUND ANOTHER

VEHICLE ON THE LOT THAT IS THE SAME MODEL AND YEAR,

AND THAT IT PERFORMED THE SAME. PLEASE NOTE THAT THIS

IS NOT THE SAME PERSON WHO WAS IN THE CAR TO

EXPERIENCE HOW MY CAR WAS DRIVING. I PERSONALLY

KNOW TWO OTHER PEOPLE WHO HAVE THE SAME EXACT

YEAR AND MODEL CX-5. I SHARED MY EXPERIENCE WITH

BOTH OWNERS- THEY BOTH TOLD ME THAT THEIR CARS DO

NOT PERFORM IN THAT WAY. ADDITIONALLY, I DROVE ONE OF

THOSE VEHICLE AND THAT ONE DID NOT PERFORM IN THE

SAME WAY THAT MINE DOES. I AM CONCERNED THAT THIS

ISSUE IS BEING BRUSHED OFF. THERE IS NO WAY THAT MAZDA

WOULD PURPOSELY DESIGN A CAR SO THAT IT JERKS,

LURCHES, AND BUCKS AT SLOW SPEEDS. I HAVE READ

REVIEWS ON ONLINE MESSAGE BOARDS WHERE OTHERS DO

COMPLAIN OF SIMILAR EXPERIENCES, WHICH IS EVEN MORE

CONCERNING. THIS POSES A SAFETY ISSUE FOR THE DRIVER,

PASSENGERS, AND OTHERS ON THE ROAD WHO MAY BE

DRIVING NEARBY. I HAVE AN APPOINTMENT AND WILL BE

TAKING THE CAR BACK THIS COMING MONDAY TO TRY AND

FURTHER ADDRESS THIS ISSUE, BUT FELT IT NECESSARY TO

FILE HERE IN THE CASE THAT FURTHER ACTION NEEDS TO BE

TAKEN AT A LARGER SCALE SINCE IT APPEARS AS IF OTHERS,

THOUGH NOT ALL, 2019 MAZDA CX-5 OWNERS ARE

EXPERIENCING THE SAME. *TR[47]

106.     On June 30, 2020, the owner of a 2020 CX-30 filed the following

complaint with NHTSA:

I WAS DRIVING CAR ON.THE HIGHWAY AND AS I PREPARED

TO     EXIT     I     BRAKED     AND     THE CAR HESITATED FOR 2

SECONDS BEFORE BRAKES ENGAGED.   CAR   HAS   ALSO

HAD    HESITATION UPON ACCELERATION PERIODICALLY .THIS

HAS BEEN AN ISSUE UPON JUST A FEW WEEKS OF OWNERSHIP.

THE BREAK ISSUE WAS JUST RECENTLY 7-29-20 I HAVE TAKEN

THE CAR TO THE LOCAL DEALERSHIP ABOUT THE

DRIVING/ACCELARATION ISSUE TWICE WITHOUT

RESOLUTION .[48]

107.     On September 4, 2020, the owner of a 2016 Mazda CX-5 filed the

following complaint with NHTSA:

TL* THE CONTACT OWNS A 2018 MAZDA CX-5. THE CONTACT

STATED WHILE DRIVING AT LOW SPEEDS, THE VEHICLE

STALLED AND WAS RESTARTED. WHILE THE PUSH-TO-START

---

[47] NHTSA ID 11329175.
[48] NHTSA ID 11331647.

WAS ENGAGED, THE VEHICLE REVVED UP HIGH, STALLED, AND RESTARTED. ADDITIONALLY, THE AIR CONDITIONER FAILED TO OPERATE AS DESIGNED. THE RADIO WAS ALSO INOPERABLE. THE CHECK ENGINE WARNING LIGHT WAS ILLUMINATED. THE VEHICLE WAS TAKEN TO GUNTHER MAZDA (1800 S STATE RD 7, FORT LAUDERDALE, FL 33317, (954) 420-6565) WHERE IT WAS DIAGNOSED THAT THE BATTERY, A/C MOTOR AND AN UNKNOWN CONTROLLER NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED SEVERAL TIMES HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS CONTACTED HOWEVER, NO FURTHER ASSISTANCE WAS PROVIDED. THE FAILURE MILEAGE WAS 2,000.[49]

108.    On February 8, 2021, the owner of a 2017 Mazda CX-5 filed the following complaint with NHTSA:

LOSS OF POWER TO A COMPLETE SHUTDOWN WHILE AT HIGHWAY SPEEDS OF 60-70MPH WITH FUEL TANK READING 30 MILES TO EMPTY. TOW WAS NECESSARY TO DEALERSHIP. REPLACED FUEL PUMP. 2ND OCCURRENCE WITH 60 MILES TO EMPTY. BROKE DOWN AGAIN WHILE AT HIGHWAY SPEEDS. TOWED A SECOND TIME TO DEALERSHIP. REPLACE HIGH/LOW FUEL PUMP. WAS INSTRUCTED NOT TO OPERATE VEHICLE

---

[49] NHTSA ID 11353214.

> BELOW 1/4 TANK OF FUEL. MAJOR SAFETY ISSUE WHILE AT
> HIGHWAY SPEEDS WITH DIFFICULTY MOVING TO A SAFE
> AREA. SEEMS TO BE A DESIGN OR FUEL PUMP ISSUE. [50]

109.     On February 14, 2021, the owner of a 2017 Mazda6 filed the following
complaint with NHTSA:

> I BOUGHT MY 2017 MAZDA 6 BRAND NEW. WHILE THE CAR
> WAS IN WARRANTY IN JANUARY 2020 WHILE I WAS DRIVING
> WITH 50 MILES IN HOUR, THE ENGINE WAS RUNNING ROUGH,
> THE ENGINE LIGHT WAS ON AND THE ENGINE STALL. THE CAR
> WAS TOWED BY MAZDA AT DEALER. THEY REPLACED THE
> FUEL PUMP AT THAT TIME. FEW DAYS AGO WHILE I WAS
> DRIVING WITH 35 MILES IN HOUR THE CAR DID THE SAME
> THING. MAZDA TOWED THE CAR TO ANOTHER DEALER.
> AFTER DIAGNOSIS THEY TOLD ME THAT IS NOTHING WRONG
> WITH THE CAR AND THE CAR IS NOT UNDER THE WARRANTY
> ANYMOORE . I TOLD THEM THAT THE ENGINE LIGHT WAS ON
> AND SOMETHING MUST BE WRONG. THEY DIDN'T RESPOND.
> THE CAR HAS 24,000 MILES AND I AM AFRAID TO DRIVE IT
> ANYMORE.[51]

110.     On April 13, 2021, the owner of a 2017 Mazda CX-5 filed the following
complaint with NHTSA:

> DRIVING ON EXPRESSWAY 65MPH WITH JUST UNDER A

---

[50] NHTSA ID 11395226.
[51] NHTSA ID 11396179.

QUARTER TANK OF GAS AND ENGINE CUT OFF ON ITS OWN.

MY SON WAS ABLE TO PULL OFF TO THE SIDE OF THE ROAD,

BUT WAS VERY DANGEROUS AS IT WAS A VERY BUSY

HIGHWAY. I FEEL THAT THE FUEL PUMP IS DEFECTIVE AT

HIGHWAY SPEEDS. HAD VEHICLE IMMEDIATELY TOWED TO

CLOSEST DEALER. I WAS CHARGED A DIAGNOSTIC FEE.

AGAIN, I FEEL IT IS A WEAK DESIGN OF THE FUEL PUMP AND

DANGEROUS TO DRIVE AT HIGHWAY SPEEDS. [52]

111.    On April 23, 2021, the owner of a 2013 Mazda CX-5 filed the following

complaint with NHTSA:

WHILE DRIVING MY VEHICLE ON THE INTERSTATE THE CAR

LOST THE ABILITY TO ACCELERATE. ALL OF THE DASHBOARD

LIGHTS CAME ON AND I HAD TO COAST TO THE SIDE OF THE

INTERSTATE. AFTER RESTARTING THE VEHICLE I WAS ABLE TO

DRIVE IT BUT I CANNOT TAKE THE VEHICLE OVER 30 MPH

NOW WITHOUT IT SHUTTERING AND HAVING ACCELERATION

ISSUES. THIS IS A SERIOUS AND LIFE THREATENING ISSUE

THAT NEEDS TO BE FIXED FREE OF CHARGE. I HAVE FOUND

OTHER REPORTS OF THIS HAPPENING BUT I SEE NO RECALL

INFORMATION. THIS NEEDS TO BE FIXED BEFORE MAZDA HAS

LAWSUITS FILED AGAINST THEM. THIS IS A MANUFACTURING

ERROR AND NOT A USAGE ERROR. PLEASE LOOK INTO THIS. [53]

---

[52]    NHTSA ID 11407948.
[53]    NHTSA ID 11413591.

112.     On September 12, 2021, the owner of a 2018 Mazda CX-5 filed the following complaint with NHTSA:

> WILL NOT ACCELERATE AT TIMES NO MATTER HOW FAR YOU
> PRESS DOWN ON GAS PEDAL AND WILL STALL RIGHT AFTER. I
> WILL PULL OVER SHUT OFF VEHICLE AND RESTART. THIS
> SOMETIMES CORRECTS THE PROBLEM RIGHT AWAY. OTHER
> TIMES IT LASTS LONGER. SYSTEM MALFUNCTION LIGHT
> RANDOMLY COMES ON.[54]

113.     As demonstrated above, Class Vehicles suffer from a uniform defect that causes the Fuel Pump to malfunction and fail prematurely. Compounding the issue, drivers often are not protected from these safety risks by a warning prior to Fuel Pump failure. The above complaints are mere examples of the ones lodged with NHTSA regarding the Fuel Pump Defect. All the complaints above experienced symptoms associated with the Fuel Pump Defect.[55]

114.     Mazda knew that the Fuel Pump Defect was present in all Class Vehicles equipped with the defective Denso Fuel Pump, as demonstrated above, but it failed to include them in the Recall. Mazda's unconscionable act deprives those Class Members not included in the Recall a free and adequate repair, if one is devised and implemented.

115.     As demonstrated, the Fuel Pump Defect affects all Class Vehicles, and not just the vehicles that were part of Mazda's Recall. Additionally, the Fuel Pump Defect creates an unreasonable risk of injury or death to Plaintiffs, Class

---

[54] NHTSA ID 11432642.
[55] See, e.g., Exhibits A and C.

Members, and others.

116.     The Fuel Pump Defect causes Class Vehicles to become dangerous and inoperable while on the road and therefore they are not fit for their ordinary purpose.

### D. DEFENDANTS KNEW ABOUT THE FUEL PUMP DEFECT, BUT CONTINUED TO MANUFACTURE, MARKET, AND SELL CLASS VEHICLES

117.     Mazda knew, should have known, or were reckless in not knowing about the Fuel Pump Defect, but concealed or failed to disclose the defect and continued to manufacture, market, and sell its popular Class Vehicles – including the Recalled Vehicles – equipped with the defective Denso Fuel Pump. Specifically, Mazda knew, should have known, or was reckless in not knowing the defective Fuel Pumps in the Class Vehicles exposed Class Members to extreme danger and, in order to render them safe, the Class Vehicles needed new or enhanced Fuel Pumps that functioned safely and as intended. Nonetheless, Mazda failed to take corrective action.

118.     In fact, Mazda knew, should have known, or was reckless in not knowing about the Fuel Pump Defect since the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles. Specifically, Mazda conducts rigorous pre-production testing and validation.[56] Mazda and Denso conduct various pre-release testing, such as production part approval process

---

[56] http://suppliers.mazdausa.com/Library/Quality_Control_Standard_For_Suppliers .pdf?bcs-agent-scanner=a38b7f22-f5b0-3443-829f-9a9ba5195bd0 (last visited November 16, 2021).

("PPAP") testing and failure mode and effects analysis ("FMEA") testing. During these phases, Mazda would have gained comprehensive and exclusive knowledge about the Fuel Pumps, particularly the basic engineering principles behind the construction and function of the Fuel Pumps such as their impellers' susceptibility to fuel absorption and deformation. However, Mazda failed to act on that knowledge and instead installed the defective Fuel Pumps in the Class Vehicles, and Mazda subsequently marketed and sold the vehicles to unsuspecting consumers without disclosing the safety risk or warning Class Members.

119.    Further, as set forth above, the TREAD Act requires automakers like Mazda to be in close contact with NHTSA regarding potential defects, and therefore Mazda should (and does) monitor NHTSA databases for consumer complaints regarding their automobiles. From its monitoring of the NHTSA databases, Mazda knew or should have known of the many Fuel Pump Defect complaints lodged as early as 2017, such as those quoted above. However, Mazda failed to act on that knowledge by taking action, including recalling the vehicles with the Fuel Pump Defect.

120.    Despite Mazda's extensive knowledge, Mazda failed to act on that knowledge by warning Class Members. Sacrificing consumer safety for profits, Mazda instead chose to enrich itself by using false and misleading marketing to sell the Class Vehicles as safe and durable at inflated prices.

121.    Like Mazda, Denso knew of the Fuel Pump Defect since long before it recalled its defective Fuel Pumps on April 27, 2020. Denso tells customers "[b]ecause DENSO's rigorous manufacturing and testing process produces each

fuel pump, you can be sure it meets our high standards for fit and performance."
As part of its rigorous testing of fuel pumps and its ongoing relationships with
manufacturer customers, Denso knew or should have known about the Fuel Pump
Defect months, if not years, before it initiated a recall on April 27, 2020.

122.    Evidencing its extensive knowledge, Denso knew as early as 2016 about
the Fuel Pump Defect. In 2016, Denso filed a patent application with the United
States Patent and Trademark Office to change the chemical composition of its
impeller for greater resistance to swelling. As Denso stated in the application:

> The housing includes an inner wall defining a pump chamber into which a
> fuel flows. The impeller is made of resin and housed in the housing. The
> impeller is positioned such that a clearance having a specified dimension
> is secured between the inner wall and the impeller. ***The impeller may be
> swelled due to the fuel and water contained in the fuel, therefore a
> rotation of the impeller may be stopped when the impeller is swelled and
> comes in contact with the housing***. Thus, the dimension of the clearance
> is set to prevent the impeller from coming in contact with the housing.
> However, when the dimension of the clearance is too large, an
> abnormality, e.g., an increase of an output loss of the fuel pump or an
> increase of a power consumption of the fuel pump, may occur because the
> fuel leaks through the clearance. ***Therefore, it is required to find a resin
> material to suppress a dimensional change of the impeller, which is
> mounted to the fuel pump, due to the fuel and the water contained in the
> fuel. The dimensional change will be referred to as a swelling amount
> hereinafter.***[57]

123.    Denso's knowledge of the Fuel Pump Defect reasonably predates the filing
of the patent because Denso must have discovered the need for improved impeller
material well before it filed the patent. Specifically, Denso must have learned of

---

[57] U.S. Patent Application No. 15767375, Impeller for Fuel Pump, (application date Oct. 26,
2016) (Denso Corporation, et al. applicants), available at
https://patentscope.wipo.int/search/en/detail.jsf?docId=US231859533 (last visited November
16, 2021).

the Fuel Pump Defect since the original design, engineering, testing, and validation of the Fuel Pump and impeller, but at the very least from continued product improvement, testing, and validation of the Fuel Pump and impeller.

124.    Thus, between 2016, when Denso first learned of the Fuel Pump Defect, and April 27, 2020, when Denso issued the recall to Mazda and other automobile manufacturers, Denso had exclusive knowledge of the Fuel Pump Defect, and yet Denso failed to disclose the Defect to Plaintiffs and other Class Members.

125.    Alternatively, Denso actively concealed, and continues to conceal, the Fuel Pump Defect. Denso long knew of the Fuel Pump Defect, but in order to capitalize its economic gains, it intentionally failed to disclose it to Mazda or the Class Members. The Fuel Pump Defect is a serious safety defect that places Plaintiffs and Class Members at an increased risk for injury or death, as Denso admitted.[58] Mazda and Class Members did not know of the Fuel Pump Defect, and they couldn't have discovered it through reasonable diligence. Plaintiff and other Class Members were damaged by Denso's failure to disclose the Fuel Pump Defect, and had Denso disclosed it, they would not have purchased their Class Vehicles equipped with the Fuel Pump, or certainly would have paid less to do so.

126.    Denso could have, but failed to, disclose the Fuel Pump Defect to Mazda. Additionally, Denso could have, but failed to, disclose the Fuel Pump Defect to Plaintiffs and the Class Members by publishing it on its website, issuing a press release, or issuing an equipment recall, like it ultimately did.

127.    Defendants, at all material times, regularly met and collaborated, and

---

[58] Exhibit A and B.

continue to meet and collaborate, regarding product quality and trends. Through these regular discussions, each Defendant knew, should have known, or were reckless in not knowing what the other knew about the Fuel Pump Defect or the Fuel Pump in general.

128.    Despite Defendants' extensive knowledge, they failed to act on that knowledge by warning Class Members. Sacrificing consumer safety for profits, Defendants instead chose to enrich themselves by using false and misleading marketing to sell the Fuel Pumps and Class Vehicles as safe and durable at inflated prices.

**E. MAZDA CONTINUOUSLY TOUTED CLASS VEHICLES AS SAFE AND DEPENDABLE, CONCEALING THE FUEL PUMP DEFECT**

129.    Mazda's overarching marketing message for the Class Vehicles was and is that the vehicles are safe and dependable and that their engines can be relied on to perform well. This marketing message is false and misleading given the propensity of the Fuel Pumps in the Class Vehicles to fail, causing the vehicles' engines to run rough, stall and become inoperable which, as Mazda admits, creates an unreasonable risk of a crash.

130.    For example, Mazda dedicates a page on its website entitled "safety," where Mazda touts the safety of its vehicles, as the screenshots below indicate:[59]



FEELING SAFE GIVES YOU THE FREEDOM TO BE THE BEST DRIVER YOU CAN BE—TO
CONCENTRATE ON ENJOYING THE ROAD AHEAD AND FEEL YOUR SPIRITS LIFTED BY THE
EXPERIENCE OF DRIVING A MAZDA. THAT'S WHY WE FOCUS NOT JUST ON WHAT SAFETY
PREVENTS, BUT ALSO ON WHAT IT MAKES POSSIBLE.

131.    In addition to its general marketing message of safety, Mazda made

representations specifically about the safety of the Class Vehicles. For example,

below is a screen shot from a 2013 Mazda 3 sales brochure:[60]

---

[59] https://www.mazda.com/en/innovation/safety/ (last visited November 16, 2021).
[60] https://www.auto-brochures.com/makes/Mazda/3/Mazda_US%203_2013-
2.pdf?bcs-agent-scanner=d776a7d5-916f-ac4e-9b98-1cdb82e50896 (last visited November 16.
2021).



132.    Below is a screenshot of a 2013 Mazda CX-5 sales brochure:[61]



[61] https://www.auto-brochures.com/makes/Mazda/CX-5/Mazda_US%20CX-5_2013.pdf?bcs-agent-scanner=5d482460-e068-8a4d-ae2a-7c36321cf6b9 (last visited November 16, 2021).

133.    Below is a screenshot of a 2013 Mazda CX-9 sales brochure:[62]



134.    Mazda made similar representations throughout the class period. For

example, below is a screenshot from a 2015 Mazda 6:[63]

[62] https://www.auto-brochures.com/makes/Mazda/CX-9/Mazda_US%20CX-9_2013.pdf?bcs-agent-scanner=f45dcc28-1f67-5f4d-818f-a9316754d14a (last visited November 16, 2021).
[63] https://www.auto-brochures.com/makes/Mazda/6/Mazda_US%206_2015.pdf?bcs-agent-scanner=baf7882e-cd08-f847-8011-a373a291750b (last visited November 16, 2021).



135.    Below is a screenshot from a 2015 Mazda CX-5 sales brochure:[64]

---

[64] https://www.auto-brochures.com/makes/Mazda/CX-5/Mazda_US%20CX-5_2015.pdf?bcs-agent-scanner=f2c54917-1075-3140-8589-65c0f62d7123 (last November 16, 2021).



136.    Below is a screenshot from a 2016 Mazda CX-9 sales brochure:[65]

---



137.    Below is a screenshot from a 2017 Mazda CX-3 sales brochure:[66]

[66] https://www.auto-brochures.com/makes/Mazda/CX-3/Mazda_US%20CX-3_2017.pdf?bcs-agent-scanner=07e1093f-5237-6d4c-ab41-8806bd8b948d (last November 16, 2021.)



138.    Below is a screenshot from a 2018 Mazda CX-5 sales brochure:[67]



> [67] https://www.auto-brochures.com/makes/Mazda/CX-5/Mazda_US%20CX-5_2018.pdf?bcs-agent-scanner=3da3f5ed-2ab3-2b45-9099-17790e192b94 (last November 16, 2021.)

139.   Below is a screenshot from a 2019 Mazda CX-3 sales brochure:[68]



140.   Below is a screenshot from a 2020 Mazda CX-5 sales brochure:[69]




<div style="border:1px solid">

[68] https://www.auto-brochures.com/makes/Mazda/CX-3/Mazda_US%20CX-3_2019.pdf?bcs-agent-scanner=d8066cd4-2d75-8d4e-836f-c58ff7cda6bb (last visited November 16, 2021).

[69] https://www.auto-brochures.com/makes/Mazda/CX-5/Mazda_US%20CX-5_2020.pdf?bcs-agent-scanner=abf98e0d-70f3-594d-b39b-6959141c6c42 (last November 16, 2021.)

</div>

141.    Below is a screenshot from a 2021 Mazda 3 sales brochure:[70]



142.    As demonstrated, Mazda employed and continues to employ a long term and uniform marketing message that its vehicles are of the utmost safety and dependability.

143.    Despite Mazda's knowledge and uniform and pervasive marketing message of safety and dependability, nowhere does Mazda disclose the Fuel Pump Defect or the unreasonable risk to safety it poses, as admitted in the Recall Report.

144.    A car with a defective fuel pump that can cause the engine to studder or stall while the vehicle is in motion, as do the Class Vehicles, and thereby exposes occupants to an unreasonable risk of injury or death is **not a safe car**. Thus, Mazda's marketing of the Class Vehicles as safe and dependable is false and misleading and omits facts that would be material to consumers such as Class

[70]      https://www.auto-
brochures.com/makes/Mazda/3/Mazda_US%203_2021.pdf?bcs-agent-
scanner=8f01e6c8-b227-094c-b800-8699e4696d19 (last visited November 16, 2021).

Members who purchased or leased Class Vehicles because they were consistently

marketed as having the utmost safety on the road.

145.    Mazda marketed the Class Vehicles as safe and dependable, but failed to

disclose the existence, impact, and danger of the Fuel Pump Defect, despite its

knowledge. Specifically, Mazda:

> A.  Failed to disclose, at and after the time of purchase, lease, service, or
>
> thereafter, any and all known material defects of the Class Vehicles,
>
> including the Fuel Pump Defect, despite its knowledge;
>
> B.  Failed to disclose, at and after the time of purchase, lease, service, or
>
> thereafter, that the Class Vehicles' Fuel Pumps were defective and not fit
>
> for their ordinary purpose, despite its knowledge; and
>
> C.  Failed to disclose and actively concealed the existence and pervasiveness
>
> of the Fuel Pump Defect, despite its knowledge.

146.    Mazda's deceptive marketing and willful and knowing failure to disclose

the Fuel Pump Defect damaged, and continues to damage, Plaintiff and Class

Members. If Plaintiff and Class Members had known of the Fuel Pump Defect

and/or that the Class Vehicles were not safe and durable, they would not have

purchased or leased the Class Vehicles or certainly would have paid less to do so.

147.    Moreover, Denso has also associated itself with safety and quality. On its

website, Denso represented that it is committed to making high-quality products

that contribute to a higher quality of life for all people.[71]

[71] https://www.denso.com/global/en/about-us/our-strengths/   (last visited March 1, 2021).



**The pursuit of world firsts**

DENSO is committed to creating technologies that contribute to a better quality of life for all people. Our world-first advances range from common rail systems that dramatically improve diesel engine performance to night view technology that detects pedestrians at night.

148.    Denso also stated that it focuses on "Meticulous quality control," and that "DENSO focuses on safety because cars carry people."[72]

[72] *Id.*



## Manufacturing

Innovative products and components can only be realized if they can be manufactured. At DENSO, our technicians and engineers painstakingly refine every detail of our manufacturing systems to enable the creation of the best technologies and products.

**Meticulous quality control**

DENSO focuses on safety because cars carry people. We were one of the first parts manufacturers to build our own test courses to evaluate our products, ensuring that people could confidently drive cars using our components. Our advanced test facilities are comparable with those of major carmakers and include such advances as high-low temperature wind tunnel laboratories and anechoic chambers that simulate the diverse conditions drivers encounter every day.

149.    In its corporate brochure, Denso stated that it seeks to create a world that is accident free, a goal that obviously cannot be reached when it produced the Fuel Pumps with the Fuel Pump Defect.[73]

[73]     https://www.denso.com/global/en/-/media/global/about-us/corporate-info/profile/denso_brochure_en.pdf?rev=a5ed1a6eba404a0280d304810569c615 (last visited March 1, 2021).



150.    Additionally, on its aftermarket website, Denso stated its products are of high quality, reliable, and valuable.[74]

**WHY DENSO**

**Quality, Reliability and Value**

Quality, Reliability and Value. At DENSO we've taken everything we have learned as an OE manufacturer and applied it to our aftermarket product lines. Every component that leaves our factories has been designed with precision, manufactured to OE standards and subjected to rigorous safety and performance tests.

DENSO factories are QS9000 and ISO9000 certified worldwide, just one of the many reasons why zero defects for parts produced in the millions is a reality for DENSO. A recipient of the prestigious Deming Award for quality in 1961, we've spent over five decades perfecting our technology and processes, a claim that few automotive manufacturers can make.

The OE-standard quality and reliability of DENSO aftermarket components add up to a tremendous value for our customers.

[74] https://densoautoparts.com/why-denso.aspx (last visited March 1, 2021).

151.    Denso made specific remarks about its Fuel Pumps, claiming "not all fuel pumps are created equal" and that its Fuel Pumps "offer more than triple the lifetime…. "[75]

152.    Defendants marketed the Class Vehicles and Fuel Pumps as safe, dependable, and made of high-quality materials and innovation, but failed to disclose the existence, impact and danger of the Fuel Pump Defect and/or that the Class Vehicles were not safe or dependable. Specifically, Defendants:

    A.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Fuel Pump Defect, despite its knowledge;

    B.    Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' Fuel Pumps were defective and not fit for their ordinary purpose, despite its knowledge; and

    C.    Failed to disclose and actively concealed the existence and pervasiveness of the Fuel Pump Defect, despite its knowledge.

153.    Defendants' deceptive marketing and willful and knowing failure to disclose the Fuel Pump Defect damaged, and continues to damage, Plaintiffs and Class Members. If Plaintiffs and Class Members had known of the Fuel Pump Defect and/or that the Class Vehicles were not safe and durable, they would not have purchased or leased the Class Vehicles or certainly would have paid less to do so.

[75] https://densoautoparts.com/fuel-pumps.aspx (last visited March 1, 2021).

## F. DEFENDANTS ADMITTED THE FUEL PUMP DEFECT WAS DANGEROUSLY DEFECTIVE, BUT ISSUED INADEQUATE RECALLS

154.    Mazda's Recall, initiated on November 12, 2021, covers 121,038 vehicles with admittedly defective Fuel Pumps.[76] The root cause of Mazda's Recall is a Denso Fuel Pump with a plastic impeller made of unsuitable material which deforms due to fuel absorption.

155.    However, Mazda's Recall is limited in scope and implements a woefully inadequate repair.

156.    Specifically, Mazda's Recall fails to include older and newer model year vehicles equipped with the same defective Fuel Pump, as evidenced by the customer complaints submitted to NHTSA. See supra.

157.    Additionally, Mazda's Recall fails to offer a timely and effective remedy for the Fuel Pump Defect. Although Mazda says it will replace the defective Fuel Pumps with improved ones, it fails to provide a timeline for such repairs, and, as described below, the repairs it will perform are inadequate and can lead to dangerous conditions.

158.    Defendants' supposed "remedy" for the Mazda's Recall fails to adequately remedy the Fuel Pump Defect. The proposed "fix" replaces only the fuel pump motor in the module instead of replacing the entire fuel pump module (the "Recall Repair") as is the industry norm. Because of the risk of damage to the entire fuel pump module if only the fuel pump motor is removed and replaced, it is industry standard to replace the entire fuel pump module.

| 76 | Exhibit E. |
| --- | --- |

Contrary to industry practice, the Recall Repair replaces only the motor, placing Plaintiffs and the Class at an increased risk of experiencing additional hazardous conditions as a result of technician error or due to degradation of other components of the fuel pump module.

159.   Upon information and belief, the Recall Repair originated from Denso, the manufacturer of the defective fuel pumps that gave rise to Mazda's Recall. Denso sells its fuel pumps to automobile manufacturers as part of a fuel pump module. In a cost-savings effort, Denso provided only the defective fuel pump motor, and not the entire fuel pump module, for the Recall Repair despite knowing that industry norms would require the replacement of the entire fuel pump module to adequately remedy the Fuel Pump Defect (assuming, of course, that the new fuel pump assembly functioned properly). Mazda, fully aware that this 2020 Recall Repair would be entirely inadequate, and indeed would risk causing further damage to the fuel pump module and other component parts, decided to implement this insufficient remedy because it, like Denso, did not want to incur the costs of providing entire fuel pump modules, which would be more expensive than swapping out the fuel pump motors in the fuel pump modules in the Recalled Vehicles. Thus, Denso and Mazda are equally responsible for the inadequate Recall Repair and share equal blame for the potential hazards it presents.

160.   The Recall Repair involves both the Fuel Pump and the fuel pump module, which houses the fuel pump. The Fuel Pump (i.e., the electric motor and impeller) is an internal component of the fuel pump module. The fuel pump module is a complete package, hosting the pump, associated plumbing and the

fuel gauge sending unit. Figure 6 below is a photograph of the Denso fuel pump module used in Class Vehicles.



161.    As Figure 7 below demonstrates, the fuel pump module drops into the fuel tank through an access hole on the topside of the tank. A retainer ring ensures that the flange and O-ring create a tight seal against the tank surface, preventing fuel escape.



162.    Figure 8 below depicts the component parts of a Denso fuel pump module.



163.    The fuel pump module's housing protects the fragile internal components

that fit together like puzzle pieces within the module.

164.    As Figures 9 and 10 below demonstrate, the Denso fuel pump module is

held together with plastic tabs and clips.





165.    Fuel exposure weakens these plastic tabs and clips depleting durability and elasticity.

166.    As Figure 11 below demonstrates, the fuel pump modules contain numerous small and fragile parts, such as O-rings, that require precise installation. Disassembling the fuel pump module exposes these critical components to contamination, dislocation and breakage, thereby affecting vehicle performance.



167.    Because of these concerns (and others), it is industry standard to replace the fuel pump module as a complete unit rather than remove and replace discrete failed internal components. Replacing the fuel pump module as a complete unit greatly reduces technician error frequency.

168.    However, as Mazda and Denso ignored industry norms and instructed technicians to disassemble the fuel pump module to replace the fuel pump (i.e., the electric motor and impeller) when performing the "remedy" under the Recall Repair. Rather than replace the entire fuel pump module, Mazda's Recall directs technicians to replace only the fuel pump motor, an extremely delicate process requiring the technician to disassemble the fuel pump module, remove the motor, replace the old motor with a new one, and then reassemble the fuel pump module. This process involves bending tabs and clips, which in turn invite hairline cracks, breakage and incomplete catching of the tabs and clips that hold the fuel pump module together. These common and likely labor errors create seal failure and resultant fuel leaks and/or fuel pressure loss due to cavitation[77] or recycling of fuel.

169.    Mazda's 2020 Recall Repair not only deviates from industry norms, but it also departs from Mazda's typical practice. For example, outside of this Recall, customers who bring their vehicles to a technician for fuel pump repair typically receive a new fuel pump module. Specifically, recycling of original fuel pump module parts does not occur outside of this Recall.

170.    Mazda's 2020 Recall Repair is inadequate because it also places Plaintiffs and Class Members in harm's way. Rather than replacing the affected fuel pump module with a new fuel pump module, Mazda opted for maximizing its profits over consumer safety. Plaintiffs and Class Members whose vehicles

---

[77]  Cavitation is a phenomenon in which rapid changes of pressure in a liquid lead to the formation of small vapor-filled cavities in places where the pressure is relatively low. When subjected to higher pressure, these cavities, called "bubbles" or "voids," collapse and can generate a shock wave that strong enough to damage component parts.

received the Recall Repair drive their Vehicles under the false assumption that their vehicles were adequately repaired.

171.    The inadequacy of the Recall Repair is further demonstrated by the complaints from consumers who own Toyota, Honda, or Subaru vehicles78 that continued to experience the Fuel Pump Defect after receiving the Recall Repair.

172.    For example, on September 18, 2020, the owner of a 2019 Honda Civic submitted a complaint to NHTSA stating that he or she experienced a concerning stall and loss of motive power after the Recall Repair was performed on the vehicle:

> TL* THE CONTACT OWNS A 2019 HONDA CIVIC. THE CONTACT
> STATED WHILE DRIVING AT VARIOUS SPEEDS, THE VEHICLE
> JERKED, LOSS MOTIVE POWER, SWITCHED TO LIMP MODE
> WITH THE CHECK ENGINE WARNING LIGHT ILLUMINATED.
> THE CONTACT STATED THAT THE VEHICLE FAILED TO
> PROPERLY ACCELERATE WHILE IN LIMP MODE. AFTER
> STOPPING THE VEHICLE, THE CHECK ENGINGE WARNING
> LIGHT DISAPPEARED AND THE VEHICLE OPERATED
> NORMALLY. THE VEHICLE WAS TAKEN TO THE LOCAL
> DEALERS AUTONATION MAZDA LOCATED AT 23551 MAGIC
> MOUNTAIN PKWY, VALENCIA, CA 91355, TO BE DIAGNOSED.
> THE CONTACT WAS INFORMED THAT THE FAILURE WAS
> CAUSED BY CONTAMINATED FUEL. AFTER DRAINING THE

---

78 Denso supplied the same or substantially similar defective fuel pumps to Toyota, Honda, and Subaru, each of whom implemented the same or substantially similar inadequate repair.

FUEL SYSTEM, THE CONTACT RETRIEVED THE VEHICLE

HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER

WAS NOTIFIED OF THE FAILURE. THE CONTACT INDICATED

THAT THE FAILURE OCCURRED AFTER THE VEHICLE WAS

REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 203V314000

(FUEL SYSTEM, GASOLINE) IN JULY 2020. THE FAILURE

MILEAGE WAS 29,000.[79]

173.    In a particularly terrifying example, on August 30, 2020, the owner of a

2018 Honda HR-V reported to NHTSA that after initially being told the necessary

part was unavailable, he or she ultimately obtained the 2020 Recall Repair only to

immediately experience the overpowering smell of gasoline from a gas tank leak

that the dealership was unable to remedy, rendering the vehicle completely unsafe

and unfit to drive:

RCVD RECALL NOTICE AT END OF JULY FOR FUEL PUMP

MODULE WITHOUT SPECIFICATION IMEPLLERS. OVERTIME

THESE IMPELLERS MAY ABSORB AN EXCESSIVE AMOUNT OF

FUEL AND DEFORM. A DEFORMED IMPELLER MAY CAUSE THE

FUEL PUMP TO STOP WORKING. DID NOT RECEIVE

NOTIFICATION UNTIL THE END OF JULY 2020 WHEN THE

RECALL WAS SET IN MAY 2020. DEALER WHERE I PURCHASED

VEHCILE WAS UNAWARE OF THE RECALL AND CHECKED IN

THE BEGINNING OF AUGUST SAYING THE PARTS WERE NOT

---

79    NHTSA COMPLAINT ID No. 11359797.

YET RELEASED BY MAZDA.

FINALLY, ON 8/26/20 I CONTACTED CORPROATE WHO

INDICATED THAT THE PART HAD BEEN RELEASED A FEW

WEEKS PRIOR.

DEALER PUT IN A NEW FUEL PUMP WHICH APPARENTLY FIXES

THE PROBLEM BUT UPON PICKING IT UP THE INSIDE OF THE

VEHICLE SMELLED VERY STRONG OF GASOLINE. THE MAZDA

MECHANIC REASSURED IT WAS JUST FUMES FROM THE

REPAIR SINCE THEY ACCESS PUMP TO THE FUEL TANK FROM

INSIDE THE VEHICLE. HOWEVER, ON THE ROUGHLY 20 MILE

RIDE HOME THE SMELL OF GASOLINE GOT WORSE SO MUCH

THAT WE HAD TO ROLL THE WINDOWS DOWN BECAUSE WE

WERE GETTING A HEADACHE AND OVER TAKEN BY THE

GASOLINE SMELL. WE STOPPED AT A GAS STATION TO FILL

THE VEHICLE TANK WHICH WAS DOWN TO ABOUT ¼ TANK.

WHEN THE GAS ATTENDANT FILLED THE TANK ALL THE GAS

STARTED LEAKING OUT FROM UNDER THE CAR. CAR WAS

PUSHED AWAY FROM THE PUMP. GAS CONTINUED TO POUR

FROM UNDERNEATH AS A STEADY STREAM THEN AFTER

ABOUT A HALF HOUR TO A DRIP. VEHICLE WAS TOWED BACK

TO DEALER WHO THE NEXT DAY THOUGHT THE WING NUT TO

HOLD THE PUMP GASKET LOOSENED AND ASSURED IT WAS

FIXED. THEY FILLED TH THANK DROVE IT, SAID IT WAS FINE. I

LEFT IT OVERNIGHT, AND THE NEXT DAY THEY CHECKED THE
VEHICLE AND SAW GASOLINE STILL LEAKING OUT FROM AN
UNDETERMINED AREA UNDER THE VEHICLE. WHY WAS THE
PART NOT RELEASED FOR SO LONG? MAZDA REPAIR GARAGE
HAS NOT YET DETERMINED WHERE THE LEAK IS AND WHAT IS
DEFECTIVE AT THE TIME THIS IS WRITTEN 3 DAYS AFTER THE
RECALL REPAIR.[80]

174.    In another example of the Recall Repair creating more problems than it
solves, on October 6, 2020 the owner of 2018 Honda HR-V reported to NHTSA
that after having the 2020 Recall Repair performed on his or her vehicle parking
light and check warning lights remained illuminated:

TL* THE CONTACT OWNS A 2018 MAZDA HR-V. THE CONTACT
STATED THAT WHILE OPERATING THE VEHICLE, THE PARKING
LIGHT AND CHECK ENGINE WARNING LIGHTS REMAINED
ILLUMINATED. THE VEHICLE WAS TAKEN TO THE LOCAL
DEALER POHANKA MAZDA LOCATED AT 1772 RITCHIE
STATION CT, CAPITOL HEIGHTS, MD 20743 WHO DIAGNOSED
THE VEHICLE AND INFORMED THE CONTACT THAT THE
FAILURES WERE RELATED TO A PREVIOUS REPAIR
PERFORMED UNDER THE NHTSA CAMPAIGN NUMBER:
20V314000 (FUEL SYSTEM). NO FURTHER INFORMATION WAS
AVAILABLE. THE VEHICLE WAS NOT REPAIRED. THE

---

[80]       NHTSA Complaint ID No. 11352182.

> MANUFACTURER WAS NOTIFIED OF THE FAILURES. THE
>
> FAILURE MILEAGE WAS 33,000.[81]

175.     On January 29, 2021, the owner of a 2019 Honda Insight filed the

following complaint with NHTSA, reporting subsequent fuel pump issues after

receiving the Recall repair:

> FUEL PUMP REPLACED IN 10/2020 FOR RECALL 20V314000. IN
>
> 1/2021 I WAS PASSING A VEHICLE ON THE INTERSTATE WHEN
>
> THE CHECK ENGINE LIGHT STARTED FLASHING, THE VEHICLE
>
> STARTED BUCKING, AND I LOST ACCELERATION. AFTER
>
> SHUTTING OFF THE CAR FOR A FEW MINUTES I WAS ABLE TO
>
> CONTINUE DRIVING AT INTERSTATE SPEEDS. A LOCAL SHOP
>
> READ THE CODE AND REPORTED A MISFIRE ON CYLINDERS 3
>
> AND 4. MAZDA TECHNICIANS COULDN'T RECREATE THE ISSUE
>
> OR VIEW ANY CODE HISTORY, BUT DURING A TEST DRIVE
>
> FOUND THAT THE FUEL GAUGE HAD STOPPED FUNCTIONING.
>
> UPON INSPECTION OF THE PREVIOUSLY REPLACED FUEL
>
> PUMP IT WAS DISCOVERED THAT THE WIRES WERE
>
> CRUMBLING. THE FUEL PUMP INSTALLED DURING A RECALL
>
> CAUSED THE EXACT ISSUE IT WAS SUPPOSED TO AVOID.THE
>
> SERVICE ADVISOR QUOTED SOMEONE AT MAZDA AS SAYING
>
> THEY'VE SEEN A FEW OF THESE ISSUES COME BACK AFTER
>
> THE INITIAL RECALL.[82]

---

[82] NHTSA ID No. 11394766.

176.    On July 25, 2020, a consumer with a 2019 Toyota Highlander filed the following complaint with NHTSA:

> The contact owns a 2019 Toyota Highlander. The contact stated that while attempting to accelerate from a standing start the vehicle would suddenly accelerate and immediately hesitate before accelerating and operating as normal. The failure had occurred on 2 separate occasions. The contact indicated that the failure had occurred after the recall remedy was performed for the NHTSA recall campaign number 20V012000(fuel system). The cause of the failure was not yet determined. The dealer … [a]nd the manufacturer were notified of the failure. The failure mileage was 30,078[83]

177.    On July 2, 2020, a consumer with a 2019 Toyota Highlander filed the following complaint with NHTSA:

> Tl* the contact owns a 2019 Toyota Highlander. The contact received notification of NHTSA campaign number: 20v012000 (fuel system, gasoline) … An unknown dealer was contacted and confirmed that parts were available. The manufacturer was made aware of the issue. The contact had experienced a failure. VIN tool confirms parts were available. *bf
>
> **Consumer stated fuel pump was replaced but the jarring of the vehicle happened 2 more times.***jb[84]

---

[83] NHTSA Complaint ID No. 11342099 (emphasis added).
[84] NHTSA Complaint ID No. 11337213 (emphasis added).

178.    On July 20, 2020, a consumer with a 2018 Toyota Camry filed the following complaint with NHTSA:

> Tl* the contact owns a 2018 Toyota Camry. The contact stated that the vehicle was serviced under NHTSA campaign number: 20v012000 (fuel system, gasoline) …. After retrieving the vehicle, the contact stated that there was an abnormal fuel odor coming from the rear of the vehicle. The same dealer was contacted and informed of the issue. The contact was referred to the manufacturer to file a complaint. The manufacturer was informed of the failure and a case was filed. The failure mileage was approximately 8,000.[85]

179.    On August 24, 2020, a consumer with a 2018 Toyota Corolla filed the following complaint with NHTSA:

> TL the contact owns a 2018 Toyota Corolla. The contact received notification of NHTSA campaign numbers: 20V024000 (air bags) and 20V012000 (fuel system, gasoline). The vehicle was taken to the Toyota of Bowie dealer located at 16700 governor bridge rd, bowie, md 20716, where the recalls were repaired. The contact stated after the repairs, she started feeling dizzy and nauseated, having migraine headaches. The dealer was called back and the technician was unable to detect the cause of the issue. The contact purchased an air quality detector and detected a VOC (volatile organic compound) of.975mg (within 15 minutes of running the vehicle) which was over EPA recommendation.

---

[85] NHTSA Complaint ID No. 11340410 (emphasis added).

The manufacturer was made aware of the failure and was told that someone would call back. The contact was not called back. The vehicle was not repaired. The failure mileage was approximately 60,000.[86]

180.    On September 8, 2020, a consumer with a 2019 Toyota Highlander filed the following complaint with NHTSA:

Gas spilling after fuel pump recall***

Ever since fuel pump recall was done on 08/15/2020, the car is leaving me in a dangerous situation when I fill my gas tank in the gas station and it's spilling out gas even after the pump nozzle cuts off. This happened twice ( actually 3 times) *and started only after this recall was done.*

Last night (9/6/2020) when I was filling gas in a gas station about 50 miles from home, it did sprayout/spilled a large amount of gas ( almost half gallon ) into the ground leaving me in an extremely dangerous situation. So I drove back to where I live and went into a Sonoco to confirm the issue. This time the gas got spilled even after the pump nozzle cut off and stopped pumping. Almost a quarter gallon gas spilled out.

When it happened for the first time on August 24th (08/24/2020) *when I filled the gas for the first time after this recall I didn't quite realize what was going on and for sure it was my car. After filling the gas tank in the gas station I felt my shoes were sleepy and I could feel gas on the ground. Next day morning I started smelling gas and went to see the back of the car and I could see some drops. Apparently that was liquid*

---

[86] NHTSA Complaint ID No. 11351018 (emphasis added.)

> *gas dropping off being the tank still full.*[87]

181.    These complaints filed with NHTSA are mere examples of the vast number of consumers experiencing the Fuel Pump Defect and left without an adequate recall remedy.

182.    Therefore, Mazda's Recall is inadequate and unconscionable. Mazda failed to promptly alert Class Members to the admittedly dangerous Fuel Pump Defect and provide them with a safe alternative, which inevitably will lead to more Fuel Pump failures, and possibly injury or death. Mazda failed to adequately diagnose and repair the Fuel Pump Defect, which inevitably will lead to more Fuel Pump failures, and possibly injury or death. Egregiously, Mazda's Recall is not only an inadequate remedy for the Fuel Pump Defect, it carries a substantial risk of causing additional damage to the fuel pump module and the Vehicle. Moreover, both Recalls are also inadequate in scope, older and newer models equipped with the same defective Fuel Pump.

183.    Mazda's actions are deceitful, unconscionable, and expose Class Members to injury and death. In addition to these dangers, Mazda's actions have deprived purchasers and lessees of the Class Vehicles of the benefit of their bargain.

184.    Moreover, even though Denso's Recall is broader than Mazda's, it too fails to include all defective low-pressure Fuel Pumps. Denso states the affected population of Fuel Pumps was manufactured between September 1, 2017 and October 6, 2018. However, reports of faulty Fuel Pumps and problems associated with inoperative Fuel Pumps, such as vehicles stalling while driving, have been

---

[87] NHTSA Complaint ID No. 11353590 (emphasis added.)

made by owners and lessees to NHTSA dating back to 2015, or earlier.

Additionally, at least one other manufacturer that uses Denso's Fuel Pumps has

recalled vehicles made as early as 2013 for the same Fuel Pump Defect involving

Denso low pressure Fuel Pumps that were made with a lower density. Denso's

failure to timely, reasonably, and adequately identify the scope of the affected

Fuel Pumps is unfair and unconscionable and exposes Plaintiffs and Class

Members to extreme injury or even death.

### G. APPLICABLE WARRANTIES

185.    Mazda sold and leased the Class Vehicles with written express warranties.

186.    Mazda offered a written express basic warranty covering Mazda brand

vehicles for 36 months or 36,000 miles covering all components (except normal

wear and tear).[88] Mazda also offered a 60 month or 60,000-mile powertrain

warranty, which covers the Fuel Pump.[89]

187.    Mazda provides these warranties to buyers and lessees after the

purchase/lease of the Class Vehicles is completed; buyers and lessees have no pre-

sale/lease knowledge or ability to bargain as to the terms of the warranties.

188.    However, Mazda admitted a breach of these warranties in the Recall

Report when it reported it did not have a repair or remedy for the defective Fuel

Pump. Class Members complained to dealers about the Fuel Pump Defect but did

not receive an adequate repair, breaching the express and implied warranties

provided by Mazda.

---

88 https://www.mazdausa.com/owners/warranty (last visited November 15, 2021).
89 Id.

## H. MAZDA HAD NOTICE OF THE DEFECT THROUGHOUT THE RELEVANT PERIOD

189.    As alleged herein, the Fuel Pump Defect is a serious safety defect that Mazda has failed to repair, thus rendering the satisfaction of notice requirement futile. For example, several Plaintiffs have presented their vehicle for repair or inquired into the Recall repair only to be turned away and left waiting.

190.    In addition to other forms of notice alleged herein, Mazda has notice of the Fuel Pump Defect by way of the numerous complaints filed against it directly and through its dealers, as well as complaints submitted to NHTSA and other fora, which, upon information and belief, it monitors. Mazda also has notice of the Fuel Pump Defect from the thousands of warranty claims it admitted to receiving in relation to the Fuel Pump Defect.

191.    Moreover, as alleged in more detail herein, Mazda had notice when Plaintiffs presented their vehicles to Mazda for repair but were subsequently denied.

192.    Finally, considering the allegations Plaintiffs set forth herein and Mazda's inability to remedy the Fuel Pump Defect, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the Class Members resort to an informal dispute resolution procedure and/or afford Mazda a reasonable opportunity to cure its breach of

warranties (when it is currently unable to do so) is excused and thus deemed satisfied.

## V. FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

193.    Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mazda and Denso responsible for making false and misleading statements regarding the Class Vehicles. Mazda and Denso necessarily are in possession of all of this information. Plaintiffs' claims arise out of Defendants' fraudulent omission/concealment of the Fuel Pump Defect, despite their representations about the quality, safety, and comfort of the Class Vehicles.

194.    Plaintiffs allege that at all relevant times, including specifically at the time they and Class Members purchased their Class Vehicle, Defendants knew, or were reckless in not knowing, of the Fuel Pump Defect; Defendants had a duty to disclose the Fuel Pump Defect based upon their exclusive knowledge; and Defendants never disclosed the Fuel Pump Defect to Plaintiffs or the public at any time or place in any manner other than a halfhearted, inadequate recall of a subset of the Class Vehicles.

195.    Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendants:

   A. **Who:** Defendants actively concealed and omitted the Fuel Pump Defect from Plaintiffs and Class Members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiffs are

unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Defendants responsible for such decisions.

B. **What:** Defendants knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Fuel Pump Defect, as alleged herein. Defendants concealed and omitted the Fuel Pump Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

C. **When:** Defendants concealed and omitted material information regarding the Fuel Pump Defect at all times while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Defendants still have not disclosed the truth about the full scope of the Fuel Pump Defect in the Class Vehicles to anyone outside of their respective entities. Defendants have never taken any action to inform consumers about the true nature of the Fuel Pump Defect in Class Vehicles. And when consumers brought their vehicles to Mazda complaining of the Fuel Pump failures, Mazda denied any knowledge of or repair for the Fuel Pump Defect.

D. **Where:** Defendants concealed and omitted material information regarding the true nature of the Fuel Pump Defect in every communication they had with Plaintiffs and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the Fuel Pump

Defect in the Class Vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are channels through which Defendants could have disclosed the Fuel Pump Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class Members through means such as state vehicle registry lists.

E. **How:** Defendants concealed and omitted the Fuel Pump Defect from Plaintiffs and Class Members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Defendants actively concealed and omitted the truth about the existence, scope, and nature of the Fuel Pump Defect from Plaintiffs and Class Members at all times, even though it knew about the Fuel Pump Defect and knew that information about the Fuel Pump Defect would be important to a reasonable consumer, and Defendants promised in its marketing materials that Class Vehicles have qualities that they do not have.

F. **Why:** Defendants actively concealed and omitted material information about the Fuel Pump Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Defendants disclosed the truth, for example in its

advertisements or other materials or communications, Plaintiffs and Class

Members (all reasonable consumers) would have been aware of it, and

would not have bought or leased the Class Vehicles or would not have

paid as much for them.

## VI. TOLLING OF STATUTE OF LIMITATIONS

### A. Continuing Tolling Act

196.    Beginning in 2013, Mazda continuously marketed and sold Class Vehicles

with the defective Fuel Pumps to unsuspecting customers. Mazda continuously

represented the Class Vehicles as safe and dependable despite their propensity to

lose fuel pressure, hesitation under acceleration and/or experience engine

shutdown. Denso, the manufacturer of the defective Fuel Pumps, continuously

marketed and sold the Fuel Pumps as safe and dependable despite knowing their

impellers could deform due to excessive fuel absorption. By making these false

representations, and failing to disclose the existence of the Fuel Pump Defect in

the Class Vehicles and thereby exposing occupants to risk of injury and death,

Defendants engaged in a continuing wrong sufficient to render inapplicable any

statute of limitations that Mazda might seek to apply.

197.    Pursuant to the TREAD Act, 49 U.S.C. § 30118, automobile

manufacturers are required to report information regarding customer complaints

and warranty claims to NHTSA, and federal law imposes criminal penalties

against manufacturers who fail to disclose known safety defects. Mazda owed a

continuing duty to Plaintiffs and Class Members to disclose any risks to life and

limb that its products pose. It continually breached that duty.

198.     Mazda breached its duties to consumers by knowingly selling Class Vehicles with the defective Fuel Pumps on an ongoing basis.

199.     Mazda's knowledge of the Fuel Pump Defect is evidenced by numerous NHTSA complaints by consumers, many of whom reported contacting Mazda directly about the defective Fuel Pump. Other NHTSA complainants reported taking their vehicles to Mazda's dealers, who are agents of Mazda and, on information and belief, report consumer complaints back to Mazda.

200.     Thus, Defendants had continuing knowledge of the Fuel Pump Defect and the dangers it posed, yet continued to market and sell their products. Plaintiffs' and other Class Members' claims are not time barred.

**B.  Fraudulent Concealment Tolling**

201.     Mazda had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Class Vehicles, that the Class Vehicles had a uniform defect; and that the Fuel Pump Defect requires repairs, poses a safety risk, and reduces the intrinsic and resale value of the affected vehicles.

202.     This duty arose, inter alia, under the TREAD Act, 49 U.S.C. § 30118.

203.     Denso also had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Fuel Pumps, that the Fuel Pumps in the Class Vehicles are defective, and that the Fuel Pump Defect poses a safety risk.

204.     Mazda knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Fuel Pump Defect, as alleged herein. Mazda concealed and omitted the Fuel Pump Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

205.    Defendants knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Fuel Pump Defect, as alleged herein.

206.    Defendants together concealed and omitted to disclose the Fuel Pump Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

207.    Despite their knowledge of the Fuel Pump Defect, Defendants failed to disclose and concealed this material information from Plaintiffs and other Class Members, and instead continued to market the Class Vehicles as safe and durable.

208.    The purpose of Defendants' concealment of the Defective Fuel Pump was to prevent Plaintiffs and other Class Members from seeking redress.

209.    Plaintiffs and the other Class Members justifiably relied on Defendants to disclose the existence of dangerous defects, including the Fuel Pump Defect, in the Class Vehicles that they purchased or leased, because that defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

210.    Any applicable statute of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior was ongoing.

   **C. Discovery Rule Tolling**

211.    Through the exercise of reasonable diligence, Plaintiffs and other Class Members could not have discovered prior to Denso's Recall on April 27, 2020 and Mazda's May 28, 2020 Recall that Defendants were concealing and

misrepresenting the existence of the Fuel Pump Defect, which is installed in the Class Vehicles, and the risks it posed.

212.    Plaintiffs and the other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Defendants failed to disclose material information within their knowledge about a dangerous defect to consumers worldwide.

## VII. CLASS ACTION ALLEGATIONS

213.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

214.    Plaintiffs seek to represent a class ("Nationwide Class") defined as:

All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the fifty States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.

215.    In addition, and in the alternative to the above, Plaintiffs seek to represent individual Statewide classes.

216.    Plaintiff Bey seeks to represent a California statewide class (the "California Class") defined as follows:

All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of California.

217.    Plaintiff Bey seeks to represent a California statewide class (the "California Class") defined as follows:

> All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of California.

218.    Excluded from the Statewide Classes and Nationwide Classes (together, "Classes") are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend definitions of the Classes, and to add additional classes and sub-classes, as appropriate, during the course of this litigation.

219.    This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

220.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believe that there are not less than at least approximately 200,000 members of the Classes, the precise number of Class Vehicles is unknown to Plaintiffs but may be ascertained from Mazda's books and records. Nationwide, Multi-State and Statewide Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

221.    **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

A.  whether Defendants engaged in the conduct alleged herein;

B.  whether Defendants' alleged conduct violates applicable law;

C.  whether Defendants designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

D.  whether Defendants made false or misleading statements about the quality, safety and characteristics of the Class Vehicles and/or the Fuel Pumps;

E.  whether the Class Vehicles contain the Fuel Pump Defect;

F.  whether Defendants had actual or implied knowledge about the Fuel Pump Defect;

G.  whether Defendants failed to disclose the Fuel Pump Defect to Plaintiffs and the other members of the Classes;

H.  whether Defendants' omissions and concealment regarding the quality, safety and characteristics of the Class Vehicles and/or the Fuel Pumps were likely to deceive members of the Multi-State Consumer and Statewide Classes in violation of the state consumer protection statutes alleged herein;

I.  whether Mazda breached its express warranties with respect to the Class Vehicles;

J.   whether Mazda breached its implied warranties with respect to the Class Vehicles;

K.   whether the members of the Classes overpaid for their Class Vehicles as a result of the defect alleged herein;

L.   whether the members of the Classes are entitled to damages, restitution, disgorgement, statutory damages, exemplary damages, equitable relief, and/or other relief; and

M.   the amount and nature of relief to be awarded to Plaintiffs and the other members of the Classes.

222.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because Plaintiffs and the members of the Classes purchased or leased Class Vehicles that contain defective Fuel Pumps, as described herein. Neither Plaintiffs nor the other members of the Classes would have purchased the Class Vehicles, or would not have paid as much as they did for the Class Vehicles, had they known of the Fuel Pump Defect. Plaintiffs and the other members of the Classes suffered damages as a direct proximate result of the same wrongful practices in which Defendants engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other members of the Classes.

223.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes that they seek to represent. Plaintiffs have retained counsel competent and experienced in

complex class action litigation, including automotive litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

224.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide, Multi-State and Statewide Class Members as a whole.

225.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the others members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the other members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if these Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device, as intended by Congress, presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.   CLAIMS FOR RELIEF

### A.  Claims Brought on Behalf of New York Class

### COUNT I

### STRICT PRODUCT LIABILITY

(Individually and on behalf of the Statewide Class)

(As to all Defendants)

226.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

227.    Plaintiff brings this claim individually and on behalf of other members of the New York Class (the "Class," for purposes of this Count).

228.    Defendants are strictly liable for designing, engineering, testing, validating, manufacturing, and placing in the stream of commerce an unreasonably dangerous Fuel Pump.

229.    Defendants designed, engineered, tested, validated, manufactured, and placed in the stream of commerce the unreasonable dangerous Fuel Pump.

230.    The Class Vehicles and Fuel Pumps are being used in an intended and/or foreseeable manner. Plaintiff and Class Members have not misused or materially altered the Class Vehicles or Fuel Pumps. The Class Vehicles and Fuel Pumps are in the same or substantially similar condition as they were at the time of purchase/lease.

231.    The Class Vehicles and Fuel Pumps are unreasonably dangerous and defective because they were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce with the Fuel Pump Defect

that can cause Class Vehicles to suddenly and unexpectedly stall or lose engine power.

232.    The Fuel Pump Defect causes an unreasonably dangerous condition when Class Vehicles are used for their intended and foreseeable purpose of providing safe and reliable transportation and places Plaintiff, Class Members, and others on the road at an unreasonable and substantial risk for injury or death.

233.    Defendants were aware of feasible alternative designs which would minimize or eliminate the Fuel Pump Defect and the risk it poses. Such alternative designs were known and available when the Class Vehicles and Fuel Pumps were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce.

234.    Defendants failed to design, test, validate, manufacture, and place in the stream of commerce a Class Vehicle and Fuel Pump that is free from the Fuel Pump Defect and the unreasonable safety risks it poses.

235.    The Fuel Pump Defect causes damage to property other than the product, as explained in more detail above.

236.    As a direct and proximate result of Defendants' actions as described herein, Plaintiffs and the other Class Members have been damaged in an amount to be determined at trial.

## COUNT II

## BREACH OF EXPRESS WARRANTY

**N.Y. INS LAW § 3106 Article 31 - Warranty defined; effect of breach.**

(Individually and on behalf of the Statewide Class)

(As to Mazda)

237.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

238.    Plaintiff brings this claim individually and on behalf of other members of the New York Class (the "Class," for purposes of this Count).

239.    Mazda is a merchant with respect to the Class Vehicles.

240.    In its written express warranties, Mazda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

241.    Mazda's written express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class Members purchased or leased their Class Vehicles.

242.    Mazda breached its express warranty to repair defective parts in the Class Vehicles. Mazda admittedly has not repaired the Class Vehicles' Fuel Pump Defect.

243.    Mazda was provided notice of the Fuel Pump Defect as alleged in detail herein. Mazda has not remedied its breach.

244.    Further, Mazda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice

requirement futile. Customers that have presented their vehicles for warranty repair due to Fuel Pump failure have been denied adequate repairs.

245. The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Mazda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

246. Accordingly, recovery by Plaintiff and the other Class Members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

247. Also, as alleged in more detail herein, at the time that Mazda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Mazda improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class Members were therefore induced to purchase or lease the Mazda Vehicles under false pretenses.

248. As a direct and proximate result of Mazda's breach of its express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### N.Y. UCC § 2-A-212. Implied Warranty of Merchantability

(Individually and on behalf of the Statewide Class)

(As to Mazda)

249.     Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

250.     Plaintiff brings this claim individually and on behalf of other members of the New York Class (the "Class," for purposes of this Count).

251.     Mazda is a merchant with respect to motor vehicles under N.Y. UCC § 2-A-212. Implied Warranty of Merchantability.

252.     Pursuant to N.Y. UCC § 2-A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

253.     The Class Vehicles do not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Fuel Pump Defect which causes the Class Vehicles' Fuel Pump to prematurely fail.

254.     Mazda was provided notice of the Fuel Pump Defect as alleged in detail herein. Mazda has not remedied its breach.

255.     Further, Mazda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Fuel Pump failure have been denied adequate repair.

256.     Plaintiff and the other Class Members suffered injuries due to the defective nature of the Class Vehicles and Mazda's breach of the warranty of merchantability.

257.     As a direct and proximate result of Mazda's breach of the warranty of merchantability, Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

## COUNT IV

## NEGLIGENT RECALL/UNDERTAKING

## N.Y. Senate Bill S6059A & S5616A

(Individually and on behalf of the Statewide Class)

(As to Mazda)

258.     Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

259.     Plaintiff brings this claim individually and on behalf of other members of the New York Class (the "Class," for purposes of this Count).

260.     Prior to the events that made the basis of this action, Mazda designed, engineered, tested, validated, manufactured, marketed, and placed the Class Vehicles in the stream of commerce.

261.    On November 12, 2021, Mazda initiated a voluntary recall of the Recalled Vehicles. Mazda's recall was voluntary and not initiated by NHTSA.

262.    Mazda owed a duty to use reasonable care to Plaintiffs and Class Members based on its undertaking of the Recall.

263.    As described above, among other things, Mazda breached its duty by conducting the Recall negligently and/or wantonly by, among other things, failing to adequately diagnose and remedy the Fuel Pump Defect and notify Plaintiffs and the Class to stop driving their Class Vehicles. Mazda's failure to do so continues to expose Plaintiff and the Class to the risk of injury and death.

264.    For the reasons set for the above, Mazda knew, or should have known through the exercise of ordinary care, the Recall was not being performed in a reasonable manner.

265.    The Fuel Pump Defect damages property other than the Fuel Pump.

266.    As a direct and proximate result, Plaintiff and the other Class Members have been and continue to be damaged in an amount to be determined at trial.

**COUNT V**

**FRAUDULENT OMISSION**

(Individually and on behalf of the Statewide Class)

(As to all Defendants)

267.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

268.    Plaintiff brings this claim individually and on behalf of other members of the New York Class (the "Class," for purposes of this Count)."

269.    Defendants were aware of the Fuel Pump Defect within the Class Vehicles when they marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

270.    Having been aware of the Fuel Pump Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Fuel Pump Defect, Defendants had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

271.    Defendants did not disclose the Fuel Pump Defect to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

272.    For the reasons set forth above, the Fuel Pump Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

273.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

274.    Had Plaintiff and the other members of the Class known of the Fuel Pump Defect within the Class Vehicles, they would have not have purchased the Class Vehicles or would have paid less for the Class Vehicles.

275.    Through its omissions regarding the Fuel Pump Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiff and the other members of the Class to purchase a Class Vehicle that they otherwise would not

have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

276.    As a direct and proximate result of Defendants' omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Fuel Pump Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**B. Claims on Behalf of the California Class**

<div align="center">

**COUNT VI**

**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL.**

**CIV. CODE §§ 1750, ET SEQ.**

(Individually and on behalf of the Statewide Class)

(As to all Defendants)

</div>

277.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

278.    Plaintiff brings this cause of action on behalf of himself and on behalf of the California Class ("Class" for purposes of this Count).

279.    Defendants are "persons" as defined by California Civil Code § 1761(c).

280.    Plaintiff and the California Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased Class Vehicles for personal, family, or household use.

281.     The sale of the Class Vehicles to Plaintiff and the putative Class Members is a "transaction" as defined by California Civil Code § 1761(e).

282.     Defendants' acts and practices, which were intended to result, and which did result, in the sale of the Class Vehicles, violate § 1770 of the Consumers Legal Remedies Act ("CLRA") for at least the following reasons:

283.     Defendants represented that the Class Vehicles have characteristics, uses or benefits which they do not have;

284.     Defendants advertised their goods with intent to not sell them as advertised;

285.     Defendants represented that their products are of a particular standard, quality, or grade when they are not; and

286.     Defendants represented that their goods have been supplied in accordance with a previous representation when they have not.

287.     By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiff and the prospective Class Members, Defendants violated California Civil Code § 1761(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles and their engine components were of a particular standard, quality, or grade when they were of another. See Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

288.     Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

289.    Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use. The Fuel Pump Defect is in each of the Class Vehicles at purchase or lease but may have not been discovered by putative Class Members until months, or years, after the purchase. Indeed, Defendants knew, or should have known, well in advance of the Recall that the Class Vehicles contained the Fuel Pump Defect which presents a substantial danger of bodily injury or death.

290.    As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Fuel Pump Defect, Plaintiff and the California Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

291.    Defendants were under a duty to Plaintiff and the California Class Members to disclose the defective nature of the Class Vehicles and/or associated repair costs because Defendants were in a superior position to know the true state of facts about the Fuel Pump Defect in the Class Vehicles and Plaintiff and California Class Members could not reasonably have been expected to learn or discover that their vehicles had a dangerous safety defect until it manifested.

292.    In failing to disclose the defective nature of the Class Vehicles prior to January 2019, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

293.    A reasonable consumer would have considered the facts Defendants concealed or did not disclose to Plaintiff and the California Class Members to be material in deciding whether to purchase or lease the Class Vehicles or pay less for them. Had Plaintiff and the California Class Members known of the defective nature of the Class Vehicles, they would not have purchased or leased said vehicles or would have paid less for them.

294.    Plaintiff and the California Class Members are reasonable consumers who do not expect their vehicles to suddenly accelerate, decelerate, or stall without warning and while underway. This is the reasonable and objective consumer expectation relating to consumer automobiles.

295.    As a result of Defendants' knowing and intentional concealment of the Fuel Pump Defect, Plaintiff and the California Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience the Fuel Pump Defect and the resultant effects therefrom.

296.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and California Class Members suffered and will continue to suffer actual damages. Had Defendants disclosed the true nature and/or danger in their vehicles, Plaintiff and members of the California Class would not have been misled into purchasing the Class Vehicles or would have paid significantly less for them.

297.    Plaintiff, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seek injunctive relief prohibiting Defendants from continuing these

unlawful practices pursuant to California Civil Code § 1782(a)(2), and such other equitable relief, including restitution of either (1) the full purchase or lease price paid by customers who purchased a Class Vehicle, or (2) a portion of the purchase or lease price paid by customers who purchased or leased a Class Vehicle reflecting the difference in value as compared to a vehicle without the defect.

298.    Plaintiff only seeks injunctive relief for purposes of this Count, therefore notice is not required.

<div align="center">

**COUNT VII**

**STRICT PRODUCT LIABILITY**

(Individually and on Behalf of the Statewide Class)

(As to all Defendants)

</div>

299.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

300.    Plaintiff brings this claim individually and on behalf of other members of the California Class (the "Class," for purposes of this Count).

301.    Defendants are strictly liable for designing, engineering, testing, validating, manufacturing, and placing in the stream of commerce an unreasonably dangerous Fuel Pump.

302.    Defendants designed, engineered, tested, validated, manufactured, and placed in the stream of commerce the unreasonable dangerous Fuel Pump.

303.    The Class Vehicles and Fuel Pumps are being used in an intended and/or foreseeable manner. Plaintiff and Class Members have not misused or materially altered the Class Vehicles or Fuel Pumps. The Class Vehicles and Fuel Pumps are

in the same or substantially similar condition as they were at the time of purchase/lease.

304.    The Class Vehicles and Fuel Pumps are unreasonably dangerous and defective because they were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce with the Fuel Pump Defect that can cause Class Vehicles to suddenly and unexpectedly stall or lose engine power.

305.    The Fuel Pump Defect causes an unreasonably dangerous condition when Class Vehicles are used for their intended and foreseeable purpose of providing safe and reliable transportation and places Plaintiff, Class Members, and others on the road at an unreasonable and substantial risk for injury or death.

306.    Defendants were aware of feasible alternative designs which would minimize or eliminate the Fuel Pump Defect and the risk it poses. Such alternative designs were known and available when the Class Vehicles and Fuel Pumps were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce.

307.    Defendants failed to design, test, validate, manufacture, and place in the stream of commerce a Class Vehicle and Fuel Pump that is free from the Fuel Pump Defect and the unreasonable safety risks it poses.

308.    The Fuel Pump Defect causes damage to property other than the product, as explained in more detail above.

309.   As a direct and proximate result of Defendants' actions as described herein, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

## COUNT VIII

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT

## CAL. CIV. CODE §§ 1790, ET SEQ.

(Individually and on Behalf of the Statewide Class)

(As to Mazda)

310.   Plaintiff Tamerlane ("Plaintiff" for purposes of this Count) incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

311.   Plaintiff brings this cause of action on behalf of himself and on behalf of a California Class ("Class" for purposes of this Count).

312.   Plaintiff is a buyer as Civil Code section 1791, subdivision (b), defines the term "buyer."

313.   The Class Vehicles are consumer goods, as Civil Code section 1791, subdivision (a), defines the term "consumer good." The Class Vehicles include new motor vehicles, as Civil Code section 1793.22, subdivision (e)(2), defines the term "new motor vehicle."

314.   Mazda was, at all times relevant hereto, the manufacturer, distributor, warrantor, lessor, and/or seller of the Class Vehicles. Mazda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

315.     Plaintiff purchased a Class Vehicle and Mazda provided Plaintiff and
California Class Members with a standard express written warranty covering the
Class Vehicles.

316.     Mazda is unable to conform Class Vehicles to its express warranty as it
has no fix for the Fuel Pump Defect. Mazda is only prepared to temporarily
replace Plaintiffs' Class Vehicles with ones of inferior quality he cannot safely
operate and that cannot be made to conform to Mazda's express warranty.

317.     Plaintiff and the California Class Members were harmed because they
purchased or leased the Class Vehicles and paid the full purchase or lease price of
those vehicles but were unable to use such Class Vehicles due to the Fuel Pump
Defect. Temporary loaner vehicles to be provided to Plaintiff and California Class
Members are not of the same quality as the Class Vehicles purchased or leased
and Plaintiff and the Class Members suffered substantial economic injury and
other harm as they were deprived of the benefit of the bargain that they struck
with Mazda.

318.     Mazda's failure to equip the Class Vehicles with an appropriate and
reliable fuel pump, and failure to repair the Fuel Pump Defect such that the Class
Vehicles conform to the express warranty, is a substantial factor in Plaintiff's and
California Class Members' harm.

319.     Mazda is unable to conform the Class Vehicles to the express warranties
despite being afforded a reasonable opportunity to do so. Mazda will not replace
the Class Vehicles or refund the purchase price and/or lease payments. Rather,

Mazda insists that California Class Members continue to make payments on inoperable Class Vehicles.

320.    Since being informed of the defect in the Class Vehicles, neither Plaintiff nor Class Members have been able to safely drive their Class Vehicles as the Fuel Pump Defect is likely to cause death or serious injury if it fails while the Class Vehicles are being operated.

321.    Under the Song-Beverly Consumer Warranty Act, all express warranties are accompanied by the implied warranty of merchantability, which may not be disclaimed by the manufacturer or retail seller.

322.    Mazda provided Plaintiff and the California Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they are sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, among other things, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

323.    Mazda impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (1) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (2) a warranty that the Class Vehicles would be fit for their intended use while they were being operated.

324.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the California Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective.

325.    Mazda's breach of express and implied warranties was willful and has deprived Plaintiff and the California Class Members of the benefit of their bargain.

326.    Mazda has had multiple reasonable opportunities to cure the breach, but either cannot or will not do so due to conditions reasonably within its control. Pursuant to the Song-Beverly Consumer Warranty Act, if the manufacturer is unable to conform a new motor vehicle to the express warranty, then the manufacturer shall promptly replace the vehicle with one that conforms to the express warranty or reimburse the buyer. Mazda has done neither despite being informed that the Class Vehicles are defective and do not conform to applicable warranties.

327.    Mazda's breach of express and implied warranties was willful and has deprived Plaintiff and the California Class Members of the benefit of their bargain.

328.    Mazda had notice of its breach as alleged herein.

329.    As a direct and proximate cause of Mazda's breach of express and implied warranties, Plaintiff and the California Class Members sustained damages and other losses in an amount to be determined at trial. Defendant' conduct damaged Plaintiff and the California Class Members, who are entitled to recover under

section 1794 of the act, including civil penalties, actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other such relief the Court deems appropriate.

## COUNT IX

## VIOLATION OF THE FALSE ADVERTISING LAW CALIFORNIA BUS. & PROF. CODE §§ 17500, ET SEQ.

(Individually and on behalf of the Statewide Class)

(As to Mazda)

330.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

331.    Plaintiff brings this cause of action on behalf of himself and on behalf California Class ("Class" for purposes of this Count).

332.    Mazda has benefitted from intentionally selling and leasing at an unjust profit defective Class Vehicles at artificially inflated prices due to the concealment of the Fuel Pump Defect, and Plaintiffs and other California Class Members overpaid for their Class Vehicles.

333.    Mazda publicly disseminated advertising and promotional material that was designed and intended to convey to the public that the Class Vehicles were safe, reliable, and operated as consumers would expect the Class Vehicles to operate.

334.    Mazda was aware, or should have been aware, of the Fuel Pump Defect at the time Plaintiff and California Class Members purchased or leased the Class Vehicles.

335.    However, Mazda negligently or intentionally made representations in its advertisements, and, due to issues it was aware of, did not sell the Class Vehicles that conformed to the representations and promises in the publicly disseminated advertisements.

336.    Mazda unjustly received and retained benefits from Plaintiff and the other California Class Members.

337.    It is inequitable and unconscionable for Mazda to retain these benefits.

338.    Because Mazda wrongfully concealed their misconduct, Plaintiff and California Class Members were not aware of the facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

339.    Mazda knowingly accepted the unjust benefits of its wrongful conduct.

340.    Mazda had notice of conduct as alleged herein.

341.    As a result of Mazda's misconduct, Plaintiff and California Class Members suffered an injury-in-fact and lost money and/or property in an amount to be proven at trial.

**COUNT X**

**VIOLATION OF THE UNFAIR COMPETITION LAW CAL. CIV. CODE**

**§§ 17200, ET SEQ.**

(Individually and on behalf of the Statewide Class)

(As to all Defendants)

342.     Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

343.     Plaintiff brings this cause of action on behalf of himself and on behalf the California Class ("Class" for purposes of this Count).

344.     As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value in connection with the purchase or lease of their Class Vehicles. Additionally, as a result of the Fuel Pump Defect, Plaintiff and members of the California Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

345.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

346.     Plaintiff and members of the California Class are reasonable consumers who do not expect their vehicles to suffer from sudden acceleration, deceleration, and stalling without warning.

347.     Defendants knew the Class Vehicles suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

348.     In failing to disclose the Fuel Pump Defect, Defendants' knowingly or intentionally concealed material facts and breached their duty not to do so.

349.     Defendants were under a duty to Plaintiff and members of the California Class to disclose the Fuel Pump Defect because Defendants were in a superior position to know the true state of facts about the safety defect and Plaintiff and members of the California Class could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until it manifested.

350.     A reasonable consumer would have considered the facts Defendants concealed or did not disclose to Plaintiff and members of the California Class to be important in deciding whether to purchase or lease the Class Vehicles or pay less for them. Had Plaintiff and members of the California Class known of the Fuel Pump Defect in the Class Vehicles, they would not have purchased or leased the vehicles or would have paid less for them.

351.     Defendants continued to conceal the defective nature of the Class Vehicles even after consumers began to report problems. Defendants continue to cover up and conceal the true nature of the Fuel Pump Defect.

352.     Defendants' acts, conduct, and practices were fraudulent, in that they constituted business practices and acts that were likely to deceive reasonable members of the public. Defendants' acts, conduct, and practices were fraudulent because they are immoral, unethical, oppressive, unscrupulous, and/or are substantially injurious to consumers.

353.     Defendants' acts, conduct, and practices were unfair in that they constituted business practices and acts the utility of which does not outweigh the harm to consumers. Defendants' business acts and practices were further unfair in

that they offend established public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

354. A business practice is unlawful if it is forbidden by any law. Defendants' acts, conduct, and practices were unlawful, in that they constituted:

    A.  Violations of the California Consumers Legal Remedies Act;

    B.  Violations of the Song-Beverly Consumer Warranty Act;

    C.  Violations of the False Advertising Law;

    D.  Violations of Magnuson-Moss Consumer Warranty Act; and

    E.  Violations of the express and implied warranty provisions of California Commercial Code sections 2313 and 2314.

355. By its conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

356. Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

357. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and members of the California Class have suffered and will continue to suffer actual damages.

358. Defendants had notice of their conduct as alleged herein.

359. Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and members of the California Class pursuant to §§ 17203 and 17204 of the California Business & Professions Code. Plaintiff and members of the Classes also seek injunctive relief as deemed appropriate by the Court.

## COUNT XI

## NEGLIGENT RECALL/UNDERTAKING

(Individually and on Behalf of the Statewide Class)

(As to Mazda)

360.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

361.    Plaintiff brings this cause of action on behalf of himself and on behalf a California Class ("Class" for purposes of this Count).

362.    Prior to the events that made the basis for this action, Mazda designed, engineered, manufactured, marketed, and placed the Class Vehicles in the stream of commerce.

363.    As described above, on November 12, 2021, Mazda initiated a voluntary recall of the Recalled Vehicles. Mazda's recall was voluntary and not initiated by NHTSA.

364.    Mazda owed a duty to use reasonable care to Plaintiff and Class Members based on its undertaking of the Recall.

365.    As described above, Mazda breached its duty by conducting the Recall negligently and/or wantonly by, among other things, failing to notify Plaintiff and the Class of the Fuel Pump Defect, failing to direct Class Members to stop driving their Class Vehicles, and failing to offer Class Members a free loaner vehicle of

comparable make, model, or value as their Class Vehicles until Mazda is able to

devise a remedy that is safe and dependable (if ever) and implement it in each

Class Vehicle. Mazda's failure to do so continues to expose Plaintiff and the Class

to the risk of injury and death.

366.    For the reasons set for the above, Mazda knew, or should have known

through the exercise of ordinary care, the Recall was not being performed in a

reasonable manner.

367.    As a direct and proximate result, Plaintiff and the other Class Members

have been and continue to be damaged in an amount to be determined at trial.


### COUNT XII FRAUDULENT OMISSION

(Individually and on Behalf of the Statewide Class)

(As to all Defendants)

368.    Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporates by

reference each allegation as if set forth fully herein.

369.    Plaintiff brings this claim individually and on behalf of the California

Class ("Class" for purposes of this Count).

370.    Defendants were aware of the Fuel Pump Defect within the Class Vehicles

when the Class Vehicles were marketed and sold to Plaintiff and the other

members of the Class.

371.    Having been aware of the Fuel Pump Defect within the Class Vehicles,

and having known that Plaintiff and the other members of the Class could not

have reasonably been expected to know of the Fuel Pump Defect, Defendants had

a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

372.    Defendants did not disclose the Fuel Pump Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

373.    For the reasons set forth above, the Fuel Pump Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

374.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

375.    Had Plaintiff and the other members of the Class known of the Fuel Pump Defect within the Class Vehicles, they would have not purchased or leased the Class Vehicles or would have paid less for the Class Vehicles.

376.    Through their omissions regarding the Fuel Pump Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase or lease a Class Vehicle that they otherwise would not have purchased or leased, or pay more for a Class Vehicle than they otherwise would have paid.

377.    As a direct and proximate result of Defendants' omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased or leased the Class Vehicles at all if the Fuel Pump Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**C. Claims Brought on Behalf of the Nationwide Class**

**COUNT XIII**

**BREACH OF EXPRESS WARRANTY FLA. STAT. UCC CODE § 672.313, AND MATERIALLY IDENTICAL STATE STATUTES**

(Individually and on behalf of the Nationwide Class)

(As to Mazda)

378.     Plaintiff Bey ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

379.     Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class (the "Class" for purposes of this Count).

380.     Mazda is a merchant with respect to the Class Vehicles.

381.     In its written express warranties, Mazda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

382.     Mazda's written express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class Members purchased or leased their Class Vehicles.

383.     Mazda breached its express warranty to repair defective parts in the Class Vehicles. Mazda has not repaired the Class Vehicles' Fuel Pump Defect.

384.     Mazda was provided notice of the Fuel Pump Defect as alleged in detail herein. Mazda has not remedied its breach.

385.    Further, Mazda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice requirement futile. Customers that have presented their vehicles for warranty repair due to Fuel Pump failure have been denied adequate repairs.

386.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Mazda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

387.    Accordingly, recovery by Plaintiff and the other Class Members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

388.    Also, as alleged in more detail herein, at the time that Mazda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Mazda improperly concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class Members were therefore induced to purchase or lease the Mazda Vehicles under false pretenses.

389.    As a direct and proximate result of Mazda's breach of its express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

## COUNT XIV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## FLA. STAT. UCC CODE § 672.314, AND MATERIALLY IDENTICAL

## STATE STATUTES

(Individually and on behalf of the Statewide Class)

(As to Mazda)

390.    Plaintiff Tamerlane ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

391.    Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

392.    Mazda is a merchant with respect to motor vehicles under Fla. Stat. § § 672.104 and 672.103.

393.    Pursuant to Fla. Stat. UCC CODE § 672.314 and 672.316, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

394.    The Class Vehicles do not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Fuel Pump Defect which causes the Class Vehicles' Fuel Pump to prematurely fail.

395.    Mazda was provided notice of the Fuel Pump Defect as alleged in detail herein. Mazda has not remedied its breach.

396.    Further, Mazda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Fuel Pump failure have been denied adequate repair.

397.    Plaintiffs and the other Class Members suffered injuries due to the defective nature of the Class Vehicles and Mazda's breach of the warranty of merchantability.

398.    As a direct and proximate result of Mazda's breach of the warranty of merchantability, Plaintiff and the other Class Members have been damaged in an amount to be proven at trial.

## COUNT XV

## COMMON LAW FRAUDULENT OMISSION/CONCEALMENT

(Individually and on Behalf of the Nationwide Class)

(As to Mazda and Denso)

399.    Plaintiff Tamerlane ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

400.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class ("Class" for purposes of this Count).

401.    Defendants were aware of the Fuel Pump Defect within the Class Vehicles when the Class Vehicles were marketed and sold to Plaintiff and the other members of the Class.

402.    Having been aware of the Fuel Pump Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Fuel Pump Defect, Defendants had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

403.    Defendants did not disclose the Fuel Pump Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

404.    For the reasons set forth above, the Fuel Pump Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

405.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

406.    Had Plaintiff and the other members of the Class known of the Fuel Pump Defect within the Class Vehicles, they would have not purchased or leased the Class Vehicles or would have paid less for the Class Vehicles.

407.    Through their omissions regarding the Fuel Pump Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase or lease a Class Vehicle that they otherwise would not have purchased or leased, or pay more for a Class Vehicle than they otherwise would have paid.

408.    As a direct and proximate result of Defendants' omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not

have purchased or leased the Class Vehicles at all if the Fuel Pump Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT XVI

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

## 15 U.S.C. §§ 2301, et seq.

(Individually and on behalf of the Nationwide Class)

(As to Mazda)

409.    Plaintiffs Tamerlane ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

410.    Plaintiff bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

411.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332 (a) and (d).

412.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

413.    Mazda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

414.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

415.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

416.    In its express written warranties, Mazda expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects become apparent during the warranty period.

417.    Mazda's warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

418.    With respect to Class Members' purchases or leases of the Class Vehicles, the terms of Mazda's written warranties and implied warranty became part of the basis of the bargain between Mazda and Plaintiff and other Class Members.

419.    Mazda breached the implied warranty of merchantability. Without limitation, the Class Vehicles have Fuel Pumps that prematurely fail, as described above, which renders the Class Vehicles unmerchantable.

420.    Mazda breached its express warranties by not offering a functioning repair for the defective Fuel Pump in the Class Vehicles as evidenced by Mazda's own admission in the Recall Report that it has not identified a remedy.

421.    Further, Mazda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, Class Members report Fuel Pump failure to their dealer, but Mazda has failed to repair the defect.

422.    At the time of sale or lease of each Class Vehicle, Mazda knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Fuel Pump Defect.

423.    The amount in controversy of Plaintiffs' individual claims exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of costs and interest, computed on the basis of all claims to be determined in this lawsuit.

424.    Plaintiffs, individually and on behalf of the Class Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request relief against Defendants as set forth below:

1.  Certifying the proposed Nationwide and Statewide Classes;

2.  Appointing Plaintiffs as the Class representatives and Interim Class Counsel as Class counsel;

3.  Ordering Defendants to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other Class Members, as allowable by law;

4.  Enjoining Defendants from continuing the unfair business practices alleged in this Complaint;

5.  Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

6.  Ordering Defendants to pay attorneys' fees and costs of suit;

7. Awarding injunctive relief requiring Mazda to promptly and fully inform Class Members of the Fuel Pump Defect and its associated dangers and instructing such Class Members to cease driving their vehicles, and ordering Mazda to provide free loaner vehicles of comparable make, model, or value to the Class Vehicle each Class member owns or leases until an adequate remedy for the Fuel Pump Defect is installed in the Class Vehicles; and

8. Granting such additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all triable issues.

Respectfully submitted,

Dated: April 22nd, 2022

_/s/Tamerlane T. Bey II_____

TAMERLANE TIMUR BEY II
NAACP MEMBER M-00707682
5120-B Orange County (FL) Branch
618 EAST SOUTH ST STE 500
ORLANDO, FLORIDA 32801
TBEYII@gmail.com