UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

TAMERLANE T. BEY, II,

                        Plaintiff,

            -v-

MAZDA MOTOR OF AMERICA *et al.*,

                        Defendants.

22-CV-3328 (JPO)

OPINION AND ORDER

————————————————————————

J. PAUL OETKEN, District Judge:

    Plaintiff Tamerlane T. Bey II, proceeding *pro se*, filed this action on April 22, 2022, against Defendants Mazda Motor of America ("Mazda"), Denso Corporation, and Denso International America, Inc. ("Denso"). (Dkt. No. 1; "Compl.") Bey's 125-page complaint brings, in total, sixteen counts on behalf of himself and members of a variety of classes (specifically, a purported New York class, California class, and nationwide class). Bey's claims are primarily based on state law, but also include one federal claim for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* Mazda has filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b), and Denso has filed a motion to dismiss under Federal Rules 8(a), 9(b), 12(b)(1), 12(b)(6), and 12(f). Bey did not file a responsive opposition to either Defendant's motion, though he filed a letter in response to Denso's motion to dismiss requesting that he be given "the opportunity to respond to ALL motions submitted by Defendant for this Courts Trial by Jury proceedings." (Dkt. No. 28 at 2.)

    For the reasons that follow, Defendants' motions to dismiss are granted.

1

I.      **Background**[1]

      A.      **Fuel Pump and Recalls**

This case concerns allegedly defective low-pressure fuel pumps supplied by Denso to Mazda for use in the vehicles that Mazda manufactures and sells. (Compl. ¶ 1.) These pumps contain a plastic "impeller" that, due to excessive fuel absorption, may deform and fail. (Compl. ¶¶ 64 – 66, 70 – 71.) This failure, according to a report filed by Mazda with the National Highway Traffic Safety Administration (NHTSA), could result in failure of the engine to start, stalling at low speeds, and in some cases, stalling at high speeds which could lead to a crash. (Compl. ¶ 17.)[2]

Denso issued the first recall of these fuel pumps on April 27, 2020, in a Part 573 Safety Recall Report filed with NHTSA. (Compl. ¶ 3.) This report pertained to pumps manufactured between September 1, 2017, and October 6, 2018, and listed Mazda as one purchaser of the defective pumps. (*Id.*) It also said that any remedy would be determined by the vehicle manufacturers, such as Mazda. (Compl. ¶¶ 8 – 9.) Seven months later in November 2020, Denso issued an expanded recall that also included fuel pumps manufactured as early as June 26, 2017, and as late as June 28, 2021. (Compl. ¶ 10.)

Mazda also issued recalls. On July 17, 2020, Mazda filed a Foreign Recall Campaign Report with NHTSA, alerting NHTSA of recalls of their affected vehicles in other countries, and

---

[1] The following facts are taken from the complaint and assumed true for the purpose of these motions.

[2] At various points, the complaint refers to attached exhibits that were not actually attached, such as Mazda's NHTSA report. Some of these exhibits were provided by Defendants (*see, e.g.*, Dkt. Nos. 20, 27). The Court may consider these exhibits, though provided by Defendants, properly as part of a motion to dismiss as "statements or documents incorporated into the complaint by reference." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

alerted NHTSA that "substantially similar" vehicles had been sold in the U.S. (Compl. ¶¶ 13 – 14.) At that time, Mazda did not issue a U.S.-based recall because of "differences in U.S. logistic conditions, typical customer usage, and other factors." (Compl. ¶ 15.) Then on November 12, 2021, Mazda issued a voluntary U.S.-based recall of vehicles containing the allegedly defective Denso fuel pump, a recall that included the 2018 Mazda6. (Compl. ¶ 16.)

### B.     Allegations of Denso and Mazda's Knowledge and Concealment

The complaint alleges that Denso knew that the fuel pump was defective because in 2016, Denso filed a patent application for an improvement to the allegedly defective fuel pump impeller. (Compl. ¶¶ 122 – 124.) Despite this alleged knowledge, the complaint claims that Denso misled customers through promotional materials stating that Denso is "committed to making high-quality products" and focuses on "meticulous quality control" and safety. (Compl. ¶¶ 62, 147 – 48.) Denso also allegedly told customers, though not Bey specifically, that its "rigorous manufacturing and testing process" ensures that each fuel pump "meets [Denso's] high standards for fit and performance."

Per the complaint, Mazda also knew or should have known of the alleged defect because of its "production part approval process testing and failure mode and effects analysis," because of its obligations under the Transportation Recall, Enhancement, Accountability and Documentation ("TREAD") Act, and because consumers had lodged complaints about the fuel pump on NHTSA consumer databases. (Compl. ¶¶ 91 – 112, 117 – 18). Again, despite this alleged knowledge, Mazda employed a "uniform and pervasive marketing message of safety and dependability," including in advertisements about vehicles that are now included in the recall. (Compl. ¶¶ 63, 131 – 143.) (showing examples of Mazda advertisements). The complaint alleges that Mazda could have and should have mentioned the fuel pump issue in "(1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class

Members through means such as state vehicle registry lists." (Compl. ¶ 195.) The complaint also alleges that other customers, though not Bey, brought their vehicles to Mazda and complained of fuel pump failures, and "Mazda denied any knowledge of or repair for the Fuel Pump Defect." (Compl. ¶ 195.)

    C.    **Bey's Allegations**

Bey, who states that he is a New York resident, alleges that he purchased a used 2018 Mazda6 from the Carl Black Orlando car dealership in Orlando, Florida, on February 16, 2021. (Compl. ¶¶ 38 – 39.) Before his purchase, Bey alleges that he reviewed Mazda promotional materials and interacted with an (unidentified) sales representative "without Mazda disclosing the Fuel Pump defect." (Compl. ¶ 40.) Bey claims that his Mazda6 contains the fuel pump defect because "during at least six different usages experienced hesitated [*sic*] and interrupted acceleration and near engine stall out."[3] (Compl. ¶ 43.) Bey alleges that this defect "creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to Plaintiff Bey, other occupants in his Class Vehicle, and others on the road," and that after purchasing his vehicle, Bey "did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented," as the defect "has significantly diminished the value" of his Mazda6. (Compl. ¶¶43 – 45.)

---

[3] The Court notes that these details also appear verbatim as to the experience of the named plaintiff in another class action currently pending in California's Central District, but with the substitution of Bey's name. *See Townsend Vance et al v. Mazda Motor of America, Inc., et al*, 21 Civ. 1890 (C.D. Cal.), Docket No. 1. at ¶¶ 43 – 45. Bey's complaint is, aside from the insertion of his own name and vehicle purchase information, nearly word-for-word identical to the first complaint filed in the California action. This explains some idiosyncrasies of the complaint, such as references to "counsel," though Bey proceeds *pro se*, and references to multiple plaintiffs, despite Bey proceeding alone.

## II.   Legal Standard

Defendants have moved for dismissal on grounds pertaining both to this Court's jurisdiction and the merits of Bey's claim.  When a court considers both jurisdictional and merits issues at this threshold, "logic compel[s] initial consideration of the issue of jurisdiction." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963).  This is both because a court without jurisdiction "lacks power to dismiss a complaint for failure to state a claim," and because "dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum."  *Id.*  Accordingly, the Court first considers whether it has subject matter jurisdiction over this case.

"A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists."  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  When the Court "lacks the statutory or constitutional power to adjudicate" a claim, it must dismiss it either *sua sponte* or under Rule 12(b)(1).  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015).

In bringing a 12(b)(1) motion, "[t]he defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both."  *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).  While a court must accept as true all the material factual allegations contained in the complaint, in contrast with a 12(b)(6) motion, on a 12(b)(1) motion it is "not to draw inferences from the complaint favorable to plaintiffs."  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Indeed, where a defendant challenges the factual sufficiency of plaintiff's assertion of jurisdiction, the court "must" consult factual

submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Robinson,* 269 F.3d at 141.

Finally, Bey is proceeding *pro se.* "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

### III. Discussion

Denso argues that this Court lacks subject matter jurisdiction on either of the grounds that Bey proffers. (*See* Dkt. No. 26 at 9.)

Bey first bases this Court's jurisdiction on the Class Action Fairness Act, 28 U.S.C. § 1332(a) and (d) ("CAFA"). As a *pro se* plaintiff, Bey cannot bring an action on behalf of others. *See United States v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause'") (citation omitted); *Phillips v. Tobin*, 548 F.2d 408, 410 (2d Cir. 1976) (holding that a prisoner cannot bring a class action on behalf of fellow inmates). Accordingly, Bey's complaint is construed as raising only individual claims, and CAFA cannot confer jurisdiction.

Bey also states that this Court has jurisdiction under 28 U.S.C. § 1331 by virtue of his claim under the Magnuson-Moss Warranty Act (MMWA), which arises under federal law, and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

The MMWA only provides federal jurisdiction where certain requirements are satisfied. Relevant here, MMWA claims may only be brought in federal court "if the amount in controversy [meets or exceeds] the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in [the] suit." 15 U.S.C. § 2310(d)(3)(B).

The MMWA computes damages in accordance with the underlying state law. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017); *see also Meserole v. Sony Corp. of Am.*, No. 08 Civ. 8987, 2009 WL 1403933, at *10 (S.D.N.Y. May 19, 2009) (explaining the MMWA does not create additional bases for recovery under federal law, but rather allows a consumer to recover damages under existing state law). Bey purports to bring this action under the law of New York, where he alleges he lives, and of Florida, where he alleges he bought this vehicle.[4] In New York, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." N.Y. U.C.C. § 2-714(2). In Florida, the ordinary measure of damages for the breach of an express warranty is "the purchase price of a non-defective [vehicle] less the value of the defective [vehicle] when it was purchased." *Bentley v. Volkswagen Grp. of Am., Inc.*, 2013 WL 5927974, at *1 (M.D. Fla. Nov. 5, 2013).

Bey bears the burden of establishing that his damages exceed $50,000 because the value of his damages is key to this Court's jurisdiction. Bey does not allege a specific damages quantum, other than alleging that he has been damaged in the amount of the diminution in value of his vehicle, a 2018 Mazda6, purchased used. (*See* Compl. ¶¶43 – 45.) This is essentially the same as the measure of damages under either New York or Florida law, and means that Bey's damages are, at most, the full value of a 2018 used Mazda6 without the alleged defect.

The Court takes judicial notice that Mazda sold the most recent model of Bey's car, a 2021 Mazda6, new for between $25,000 and $40,000, depending on features. Accordingly,

---

[4] Bey also purports to assert claims on behalf of a California class but alleges no individual connections to California.

7

under either New York or Florida law, Bey's MMWA claim cannot plausibly exceed $50,000. And under 15 U.S.C. § 2310(d)(3)(B), this Court lacks jurisdiction. For the same reason, it follows that the $75,000 requirement for diversity jurisdiction under 28 U.S.C. § 1332 cannot be met.

With Bey's federal claims dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state claims. "A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted). Here, the traditional "values of judicial economy, convenience, fairness, and comity" do not favor exercising jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). This case is at an early stage, and a nearly identical case, *Townsend Vance et al v. Mazda Motor of America, Inc., et al*, 21 Civ. 1890 (C.D. Cal.), is in active litigation in the Central District of California as a potential national class action. The Court therefore dismisses Bey's state law claims without prejudice to refiling in state court.[5]

---

[5] Should plaintiffs in the California action succeed in certifying a national class, Bey may qualify as a class member.

### IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and the complaint is DISMISSED in its entirety.

The Clerk of Court is directed to terminate the motions at ECF Nos. 19 and 25 and to close this case.

The Clerk of Court is also directed to mail a copy of this opinion and order to the pro se party.

SO ORDERED.

Dated: January 5, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge